## FARMERS' & MERCHANTS' STATE BANK OF VERDON v. UNITED STATES FIDELITY & GUARANTY CO.

Where a fidelity policy is susceptible of more than one construction, the one favorable to insured, if consistent with the objects for which the policy was given, must be adopted.

A fidelity policy, stipulating that insurer will reimburse insured, a bank, for losses sustained by the fraud of an assistant cashier, and that the employe "can" perform other duties without notice to insurer, covers a loss occasioned by the fraud of the employe, while acting as cashier, without notice to insurer; the word "can" meaning "may."

A fidelity policy, insuring a bank against loss occasioned by its assistant cashier, owning 5 per cent. of the capital stock of the bank, is terminated when the assistant cashier, without notice to insurer, acquires a majority of the stock of the bank, and becomes a director, and acts as cashier, since the object of the policy is not to insure the employer against his own fraudulent acts.

Whiting, J., dissenting.

(Opinion filed, November 14, 1911.)

Appeal from Circuit Court, Brown County; Hon. J. H. McCoy, Judge.

Action by the Farmers' & Merchants' State Bank of Verdon against the United States Fidelity & Guaranty Company. From a judgment for plaintiff, defendant appeals. Reversed.

*L. W. Crofoot,* for appellant.

A change in the office or employment of the principal, after the issuance of the bond, especially where such change would ordinarily increase the risk contemplated, operates to release the surety; and it is no answer to say that the surety is not in fact prejudiced. Sun Life Ins. Co. v. U. S. Fidelity & Guaranty Co., 40 S. E. 975; First National Bank v. Gerke, 13 Atl. 358; W. W. Kimball Co. v. Baker, 22 N. W. 730; Wheeler & Wilson Mfg

Co. v. Brown, 25 N. W. 427; Fidelity & Mut. Ins. Co. v. Dewey, 86 N. W. 423; Detroit Svgs. Bank v. Zeigler, 13 N. W. 496; American Dist Tel. Co. v. Lenning, 21 Atl. 162; The Nat'l. Merch. Bnkg. Asso. v. Conklin, 90 N. Y. 116.

The agreement in relation to accounting and examination constituted a promissory warranty and that it was material. The breach of such a warranty avoids the policy and no recovery can be had thereon. Fed. Mut. Ins. Co. v. Dewey, et al., 86 N. W. 423; Morrison v. Arons, 68 N. W. 33; Young v. Pacific Surety Co. 70 Pac. 660; U. S. F. & G. Co. v. Downey, 88 Pac. 451; F. M. Sinclair v. Nat'l Surety Co., 107 N. W. 185; Am. Bonding Co. v. Burke, 85 Pac. 692, 695; Hunt v. Fidelity & Cas. Co., 99 Fed. 242; U. S. F. & G. Co. v. Bank of Batesville, 112 S. W. 957; It is a general rule, even in the absence of any contract, that the retention of the employe and entrusting him with funds after discovering his dishonesty will usually release the insurer from liability for subsequent acts Fidelity Insurance, 19 Cyc. 520; Brandt on Suretyship, Sec. 423; Lancashire Ins. Co. v. Callahan, 71 N. W. 261.

*A. W. Campbell,* for respondent.

In a fidelity bond any ambiguity is to be construed most strongly against the indemnitor. Vol. Two Current Law, page 229; Champion Ice Mfg. Co. v. Am. Bond & Trust Company, 103 Am. State Reports 356; Am. Surety Co. of N. Y. v. Pauly, 170 U. S. 133.

HANEY, J. This is an action on a fidelity insurance policy containing these, among other, recitals, conditions, and provisions: "Whereas, Farmers' & Merchants' State Bank, Verdon, S. Dak., hereinafter called 'the employer,' is employing or intends to employ James H. Carroll in the capacity of assistant cashier, hereinafter called 'the employe,' and has filed with the United States Fidelity & Guaranty Company, hereinafter called 'the company,' an application specifying the amount of security required from said employe, and has applied to the company for the grant of this bond; and whereas, the company in consideration of the sum of $15, now paid as a premium from June 15, 1904, to June 15, 1905, at 12 o'clock noon, has agreed upon the terms, provisions and con-

ditions herein contained to issue this bond to the employer; and whereas, the employer has heretofore delivered to the company certain representations and promises relative to the duties and accounts of the employe, and other matters, it is hereby understood and agreed that those representations and such promises, and any subsequent representation or promise of the employer, hereafter required by or lodged with the company, shall constitute part of the basis and consideration of the contract hereinafter expressed: Now, therefore, this bond witnesseth: That for the consideration of the premises the company shall, during the term above mentioned, or any subsequent renewal of such term, and subject to the conditions and provisions herein contained, at the expiration of three months next, after proof satisfactory to the company, as hereinafter mentioned, make good and reimburse to the said employer such pecuniary loss as may be sustained by the employer by reasons of the fraud or dishonesty of the said employe in connection with the duties of his office or position amounting to embezzlement or larceny, and which shall have been committed during the continuance of said term, or of any renewal thereof, and discovered during said continuance or of any renewal thereof, or within six months thereafter, or within six months from the death or dismissal or retirement of said employe from the service of the employer within the period of this bond, whichever of these events shall first happen; the company's total liability on account of said employe under this bond or any renewal thereof, not to exceed the sum of $5,000: * * * Provided, that the employe can perform other duties than those properly belonging to the position mentioned in this bond without notice of such change being given to the company." The trial court having decided the plaintiff was entitled to recover $1,034.85, and denied the defendant's application for a new trial, this appeal was taken.

The transactions complained of are alleged to have occurred while James H. Carroll was in the plaintiff's employ "as assistant cashier and acting cashier." As its first defense, the defendant alleges in substance that when the policy was issued James H. Carroll was not an officer, director, or stockholder of the plaintiff

corporation, but was employed by it as assistant cashier, discharging the duties of that position in subordination to and under the immediate direction and control of the plaintiff's cashier; that when the transactions complained of occurred he was not acting in the capacity of assistant cashier, but was, without defendant's knowledge or consent, the plaintiff's cashier, one of its directors, a stockholder, owning a majority of its capital stock, exercising different and additional duties, and having different and additional responsibilities. The trial court decided against the defendant as to this defense by finding that the acts charged were done while James H. Carroll was in the plaintiff's employ "as assistant cashier and acting cashier." Appellant contends this finding was not justified by the evidence. Respondent contends it was; or, if it was not, the error affected no substantial rights (1) because the evidence disclosed no substantial change in the employe's duties and responsibilities; and (2) because whatever change there was in these respects was authorized by the terms of the policy.

[1] After the trial of this cause, and before the hearing on defendant's motion for a new trial, there was a change of judges in the Fifth circuit. The judge who tried the cause was not afforded an opportunity to reconsider his decision. The judge who ruled on the motion for a new trial was not afforded an opportunity to observe the demeanor of the witnesses. In such a case; though this court should indulge every reasonable presumption in favor of the correctness of the decision, it should have less confidence in its correctness than it has in a decision where the motion for a new trial has been denied by the judge who tried the cause.

The following facts are undisputed or established by a clear preponderance of the evidence: When the policy sued on was issued, Milton Matthieu, J. B. Meharg, and John E. Carroll were the directors of the plaintiff corporation. Milton Matthieu was its president, J. B. Meharg its vice president, John E. Carroll its cashier, and James H. Carroll its assistant cashier. Milton Matthieu and J. B. Meharg continued in the same positions during the time covered by the policy. On October 10, 1904, the cashier, John E. Carroll, sold all his stock to James H. Carroll, and retired

from any connection with the management of the bank. James H. Carroll was promoted to the position of cashier to succeed John E. Carroll. W. G. Matthieu was appointed assistant cashier to succeed James H. Carroll, and furnished a bond of $2,500. From that time on, James H. Carroll not only performed the duties of cashier, but was in fact the cashier of the plaintiff bank. He was also the owner of a majority of the stock, and acted as a director. This change in James H. Carroll's relations to the bank was known to its president and vice president, each of whom was a director, the two constituting a majority of the board of directors, and was not known to the defendant until after plaintiff's claim for reimbursement was presented.

[2, 3] If, looking at all its provisions, the policy in suit is reasonably susceptible of more than one construction, the one favorable to the plaintiff, if consistent with the objects for which the policy was given, must be adopted. Am. Surety Co. v. Pauly, 170 U. S. 133, 18 Sup. Ct. 552, 42 L. Ed. 977. This is the pertinent language of the policy: "The company shall * * * make good and reimburse to the said employer such pecuniary loss as may be sustained by the employer by reason of the fraud or dishonesty of the said employe in connection with the duties of his office or position: * * * Provided, that the employe can perform other duties than those properly belonging to the position mentioned in this bond without notice of such change being given to the company." Standing alone, in the strict grammatical sense, the last-quoted clause merely expresses the immaterial assertion that the employe will have the power to perform other duties than those properly belonging to the position mentioned in the policy. We cannot conclude it was intended to have that interpretation. It must be presumed the clause was designed to affect the rights of the parties under the contract; to either enlarge or restrict the defendant's liability, as defined by the general terms of its undertaking. Evidently "can" was intended to mean "may." So it was agreed that the employe might perform other duties for the plaintiff than those properly belonging to the position mentioned, without notice to the defendant. Why this express permission, if it was not in-

tended that the faithful performance of such other duties should be insured? There being no express limitation as to other duties, all duties consistent with the object for which the policy was given are embraced by its terms. This being so, the change in the title of the employe's position is clearly immaterial. In a case involving fidelity insurance, where the insurer undertook by its bond to make good to a bank such pecuniary loss, not exceeding $10,000, as it might sustain by reason of the fraud or dishonesty of an employe in connection with his duties as receiving teller, "or the duties to which, in the employer's service, he may be subsequently appointed or assigned by the employer," and such employe, after having been appointed assistant cashier, was guilty of conduct which caused loss to the bank in an amount exceeding the face of the bond, the Supreme Court of Georgia said: "One of the questions for decision is whether or not the company was surety for him in the latter capacity. In view of the comprehensiveness of the above-quoted language, it would be difficult to hold it was not. He was certainly appointed, subsequently to the execution of the bond, to the office of assistant cashier, as such had duties to perform in his employer's service, and by a violation of those duties brought loss to his master. We think the plain language of the contract cover the precise state of facts which arose, and that the company is as much bound to answer to the bank for the consequences of Redwine's dishonesty in the latter capacity as in the former." Fidelity Co. v. Bank, 97 Ga. 634, 25 S. E. 392, 33 L. R. A. 821, 54 Am. St. Rep. 440. The language of the policy in the case at bar is not less comprehensive than the language of the bond in the case cited. If the clause relating to duties, other than those properly belonging to the position mentioned in the policy, is to be given any effect whatever, it must be interpreted as including all duties performed for the plaintiff while in the plaintiff's employ, whether as assistant cashier or cashier, and the promotion of the employe to the position of cashier would not in itself constitute a defense in this action.

But there was a change in the employe's status in this case, not considered by the court in the Georgia decision. In that case

the employe presumably continued to occupy a subordinate position, subject to the control and supervision of the corporation, acting through its board of directors. When the policy in suit was issued, James H. Carroll was the owner of only five shares of the plaintiff's capital stock; its entire capital being $10,000. On October 10, 1904, before the alleged fraudulent acts were committed, he became the owner of 51 shares previously owned by his brother, constituting a majority of the stock, with power to select a new board of directors. After that date, he was in position to absolutely control the affairs of the bank. While in one sense he continued to be an employe of the corporation, he no longer was subject to the restraining influence of efficient supervision. He was acting as a director. Theoretically, his conduct as cashier was subject to the supervision of the other directions, so long as he allowed them to remain directors and officers of the corporation; but they were holding their positions during the pleasure of the person who owned a majority of the shares of the capital stock, and, as disclosed by the evidence, were, in fact, giving no personal attention to the management of the bank. It may be that their negligence in this regard would not of itself relieve the defendant of liability. On that phase of the case, no opinion is expressed. The precise question under discussion is the effect of the fact that Carroll became the owner of a majority of the capital stock, practically becoming the master of the corporation, and ceasing to be one of its servants. Clearly here was a situation not contemplated by the parties when the policy was issued, and not embraced by any fair and reasonable construction of its terms. In absence of convincing evidence, it would be unreasonable to assume that the defendant would insure the conduct of any man thus situated. An undertaking insuring a person against his own dishonesty would be., to say the least, a novel and unusal contract. Had the plaintiff been a natural person engaged in the banking business, and this employe purchased the business or a controlling interest therein, certainly no one would contend he could maintain this action for his own benefit or that of the depositors. The object of the under-

taking was to insure an employer against the fraudulent acts of an employe, not to insure an employer against his own fraudulent acts. When the person whose conduct is insured ceases to be an employe, within any fair and reasonable interpretation of the term as used in the policy, the insurer's liability should cease, unless he has notice of the change. So we conclude that the facts disclosed by the record on this appeal constitute a complete defense, and that the judgment and order appealed from should be reversed.

McCOY, J., taking no part in the decision.

WHITING, J. While I agree that the judgment of the trial court should be reversed, I cannot concur in the reasoning found in the foregoing opinion.

I consider the representations and promises made in the application for policy or bond immaterial, for the reason that such policy does not comply with the provisions of section 1855, Civil Code. I cannot agree that the question is the effect of Carroll's becoming owner of the larger portion of the stock, and becoming practically master of the corporation. So far as the appellant knew or seemed to care, at time of issuing bond, Carroll may have owned a large share of the stock, and been one of the directors. I apprehend a bonding company would consider the "moral hazard" less in the case of a party heavily interested in the welfare of the bank, than where such party had little or no interest therein.

On the other hand, I cannot agree that the Georgia case cited in the foregoing opinion has any application to the bond in this case. In that case the provisions of the policy were such as to cover the acts of the employe, even when he ceased entirely to perform the duties of the position he occupied at time policy was issued. There was nothing in the policy before us that permitted the appointment of the employe to another position, and, while I believe that, under the principles laid down in Am. Tel. Co. v. Lennig, 139 Pa. 594, 21 Atl. 162, Nat. Mechanics' Banking Ass'n v. Conkling, 90 N. Y. 116, 42 Am. Rep. 405, note, City of N. Y. v. Kelly, 98 N. Y. 467, 50 Am. Rep. 699, Reubens v. Joel, 13 N. Y. 496, and First Nat. Bk. of Baltimore v. Gerke, 68 Md. 449, 13

Atl. 358, 6 Am. St. Rep. 453, the appellant would have been holden, if Carroll had remained assistant cashier, even if he had, in the ordinary run of business, been called upon to perform the duties of cashier, yet, when he was chosen to be the cashier, and was thus removed from the supervision of any superior, such as would be over him when he was assistant cashier, there was a material change in the moral hazard, and the bond ceased to indemnify the respondent for his acts.