BANK OF WILLOW LAKES et al, Respondent v. SYVERSON et al, Appellants.

(178 N. W. 989.)

(File No. 4699.    Opinion filed August 25, 1920.)

1.  **Appeals—Numerous Assignments of Error, Insufficiency of Evidence, Many Particulars, Separate Consideration Of, Impractical, Controlling Assignments Only Considered.**

    There being 55 assignments of error, accompanied by 20 additional assignments of insufficiency of evidence, and it being manifestly impossible to consider them all without disregarding reasonable limitations attending judicial decisions, while all are considered, only those deemed controlling and decisive of parties' rights will be referred to.

2.  Indemnity—Bank Employees' Indemnity Bond, Permitting Interchange Of Employee's Positions—Employees Becoming Controlling Stockholders, Managers, Whether Affecting Liability Re "Employees"—Absence of Bond Provisions Re Increased Hazard From Such Changes, Effect.

Under a bank employees' surety bond covenanting to make good any loss employer may sustain through any act of personal dishonesty, embezzlement, etc., on the part of any "employee" of the bank, and permitting employer to at any time transfer any and every employee for whom the surety is or may become during continuance of bond, surety thereunder, from one position to another, and to shift them about without notice to it, the surety to remain liable for any loss, etc., the same as though no transfer had been made; held, that the fact that two of the employees, one the cashier, the other the assistant cashier, while bond was in force, became owners of a controlling interest in the bank stock, one being then elected president and director, the other cashier and director, did not work such change in the hazard assumed by surety as to release it from liability for bank losses occasioned by dishonesty of such officers; that, such change of status of the employees being consented to by insurer, therefore such changes in no manner affected its liability for their acts as employees. Held, further, that the indemnitor, by so consenting to the shifting of positions of employees without notice to it, either assumed that such change involved no increase in hazard or that it intended to waive any increased hazard supposedly arising from such changes; it being immaterial under the provisions of the policy, as to the mode in which such changes might be accomplished, since neither the application nor the policy limited the conditions upon, or means through which they might be effected, nor did either contain any provisions contemplating that any increase in hazard might arise, should the majority stockholders elect themselves to official positions and assume exclusive control of the bank's business, nor any warranties or representations from which inference of increased hazard may be drawn because of such changes of positions and management. Farmers & Merchants Bank v. U. S. Fidelity & Guaranty Co., 28 S. D. 315 distinguished.

3.  Appeals—Question Not Raised at Trial, Non-considered on Appeal.

Upon appeal from a judgment upon a bank employees' indemnity bond, the question whether judgment was properly rendered as upon a joint liability arising from acts of bank employees will not be considered, such question not having been raised on the trial.

4.  Indemnity—Bank Employees' Indemnity Bond, Judgment On,

Whether for Joint, Or Several, Liability—Findings Showing Separate Losses Re Employees, Effect.

Where, as supporting judgment against a surety company upon a bank employees' indemnity bond, findings were made to the effect that the bank suffered loss from personal dishonesty of S in the sum named, and another loss from dishonesty of F, in another sum, which with the former, aggregated the amount of judgment, the surety was not prejudiced, even though the judgment, as one upon a joint liabiilty, is technically erroneous.

5.   Same—Employee's Uncashed Checks on Another Bank, Carried as Cash, While Employee's Account Increased Therewith, Corresponding Amount Appropriated, Whether Showing Substitution Checks for Embezzled Cash.

Where a bank employee drew personal checks upon another bank, which checks were found in the employer bank by state banking department, and evidence tended to show they were carried in the bank as cash items, and that contemporaneously employee's private account was increased with amount aggregating those of the checks, and that nothing was ever received by the bank through the checks, said private account being reduced to a mere fraction of amount of checks, held, the evidence sufficiently shows that employee substituted his worthless checks in lieu of cash which he appropriated, thereby perpetrating an embezzlement of such funds within meaning of a surety bond against personal dishonesty of employees.

6.   Same—Employee Converting Bank Funds, Substitution of Notes Without Collateral or Indorser, or Director's Approval—Wife's Signature, Whether Proper Collateral—Loan of Bank's Funds to Self by Officer, Whether "Personal Dishonesty" Within Surety Bond.

Where bank employee converted to his own use bank's funds, substituting therefor his notes, without other collateral security than the co-signature of his wife, held, to be embezzlement of bank funds, within meaning of Laws 1909, Ch. 222, Art. 2, Sec. 31, providing that no * * employee of banking corporation may borrow of its funds upon his own note without having first obtained approval of majority of directors or without "ample collateral" or a "responsible indorser," and that any violation thereof shall be deemed embezzlement; since the notes were without collateral or a responsible indorser and were worthless. Held, further, that, while the evidence does not affirmatively show the notes given for money loaned by bank, yet, notes payable to the bank constitute presumptive evidence that they were given for loans of bank funds; and burden of proof is upon defendant surety to show the contrary as defense. Held, fur-

ther, that the employee's act amounted to embezzlement of bank's funds, without approval of directors, since a loan of such funds to himself by a bank officer without collateral, etc., is such violation of official duty as amounts to personal, dishonesty whether done with or without permission of the directors.

**7.  Same—Non-notification to Surety Re Employee's Dishonesty Under Surety Contract—Waiver of Defense.**

In a suit on bank employees sureties bond, defendant's contention that bank failed to notify defendant of acts of personal dishonesty of its employees within 10 days, with particulars, etc., is unavailing; the findings covering fully all material facts on this question, the evidence showing defendant waived any defense, if any, founded on those provisions of the bond.

Whiting, J., not sitting.

Appeal from Circuit Court, Clark County.  Hon. William N. Skinner, Judge.

Action by Bank of Willow Lakes, a corporation, and J. L. Wingfield, Public Examiner, against Walter Geo. Syverson, John Fredrick Flindt, and National Surety Company, a corporation, to recover upon a bank employees surety bond.  From a judgment for plaintiff, and from an order denying a new trial, defendants appeal.  Affirmed.

*Cherry & Marker,* for Appellant.
*Mather & Stover,* for Respondent.

SMITH, J.  [1]  In this case there are 55 assignments of error, accompanied by an additional assignment of insufficiency·of the evidence, embracing 20 particulars; the former covering 16 pages and the latter 13 pages of appellant's brief.  It is manifestly impossible to consider such assignments separately, without disregarding the reasonable limitations which must attend judicial decisions.  We have considered them all, but shall refer only to those which we deem controlling and decisive of the rights of the parties.

In 1908, the Bank of Willow Lakes had a capital stock of $5,000; ?o shares were owned by E. A. Syverson, 10 shares by Walter G. Syverson, and 10 shares by M. G. Anderson.  E. A. Syverson was president of the bank, and the three men named constituted its board of directors.  In 1909, through stock dividends, the capitalization was increased to $10,000, doubling the amount of stock held by each of the three stockholders.  W. G.

Syverson was cashier, and J. F. Flindt assistant cashier. In June, 1909, the bank made application to the defendant surety company for a schedule bond, covering W. G. Syverson, cashier, and John F. Flindt, asistant cashier, as employes of the bank, each in the sum of $5,000. The application was accompanied by the personal application and declaration of the cashier and assistant cashier. The applications were accepted, and a bond issued. The application contained provisions for renewal of the bond from year to year, and provided that upon renewal the liability thereunder would be and continue as if the bond had been originally written for a term including the period of such renewal. The bond was renewed annually until April 21, 1913, at which time the bond sued upon was issued, without any renewal of the original application. By this bond the surety company covenanted:

"To make good * * * any loss which the employer may sustain by reason of any act of personal dishonesty, forgery, theft, larceny, embezzlement, wrongful conversion or abstraction, on the part of any employe * * * in any position in the employer's service."

It also contains the further provision:

"The employer may, at any time, transfer any and every employe for whom the company is or may become, during the continuance of this bond, surety hereunder, from one position to another, and shift such employes about at pleasure, without notice to the company, and the company shall be liable and remain liable to the employer for any loss occasioned by such employes as fully and to the same extent as if no transfer had been made."

In 1911 the defendants W. G. Syverson and John Fredrick Flindt purchased and became owners of 80 shares of the bank stock; W. G. Syverson was elected president of the bank, and Flindt cashier, while Syverson, Flindt, and one Anderson, who owned the remaining 20 shares of stock, became the board of directors.

[2] Appellant's first and main contention seems to be that the change of official positions of Walter G. Syverson and Flindt, and their exclusive management and control of the business of the bank, effected through their purchase and ownership of a majority of the stock, worked such a change in the hazard assumed by the indemnitor as to release it from all liability. The

case of Farmers' & Merchants' Bank v. U. S. Fidelity & Guaranty Co., 28 S. D. 315, 133 N. W. 247, 36 L. R. A. (N. S.) 1152, is chiefly relied upon to sustain this contention. Appellants' argument proceeds upn the theory that Syverson and Flindt, as majority stockholders, having elected themselves as majority directors, and, as majority directors having elected themselves cashier and assistant cashier, are no longer employes, within the meaning of the bond, but have become, in substance and fact, the owners and managers of the bank itself. Under the provisions of the policy, the election of Syverson and Flindt as directors, or as cashier and assistant cashier, or to any other position in the bank, without notice, was expressly consented to by the insurer, and therefore such changes could in no manner affect its liability for their acts as "employes." The only remaining condition (not referred to in the applications or policy) which can be claimed to affect the hazard is that which is involved in and might result from changes of stock ownership. The defense therefore ultimately rests upon the fact that Syverson and Flindt, as owners of a majority of the stock, have caused themselves to be elected to positions which gave them complete control and mastery of the affairs of the bank, and wholly relieved them from any supervision or control of their acts.

It must be assumed that the indemnitor, by consenting that the employes whose integrity is guaranteed by its bond might at any time be shifted from one position to another at pleasure, without notice to the company, and that the company should remain liable as fully and to the same extent as if no transfer had been made, either assumed that such change in itself involved no increase of hazard, or that it intended to waive any increased hazard which might be supposed to arise from such changes. Under this provision of the policy, the mode in which such changes might be accomplished would seem to have been considered wholly immaterial, for the reason that neither the application nor the policy contains any provision which limits either the conditions upon or the means through which such changes might be effected, one of which was a possible change in stock ownership. It is clear that changes in offices or positions of employes effected by the acts of majority stockholders other than such officers and employes themselves would not change or affect the liability of the insurer. Neither the application nor the policy contains any

provision, express or implied, which contemplates that any increase in the hazard might arise, should the majority holders of stock see fit to elect themselves to official positions and assume actual and exclusive control of the business of the bank. Certainly such a situation is one which, if it was deemed material as affecting the hazard, cannot be assumed to have been overlooked by the guaranty company in the preparation of its applications and bond forms.

An examination of the bond in this case discloses numerous and minute provisions and conditions, both present and prospective, intended to safeguard the insurer against increased hazards; but nowhere do we find, either in the application or policy any conditions attending, or even any reference to, changes in stock ownership. Must we not assume that the company did not consider possible changes of stock ownership as affecting the hazard involved, even though the same men whose integrity was guaranteed, and who constituted a majority of the stockholders, should choose to place themselves in active management and control of the affairs of the bank? May we not assume that the bonding company considered the hazard lessened rather than increased, when persons holding a majority of the stock, and therefore most heavily interested in the success or failure of the business, should themselves choose to assume direct control and management of the affairs of the bank? Neither the application nor the policy in this case contains any warranties, express or implied, nor any representations, from which an inference of increased hazard may be drawn in case the employes whose integrity is guaranteed should become majority stockholders and thereby invested with absolute and plenary management, control, and supervision of the affairs of the bank. The application and policy constitute the entire contract between the bank and the company, and the courts are without power to interpolate into it conditions wholly foreign to its express or implied provisions. For this reason we are of the view that the case of Farmers' & Merchants' Bank v. U. S. Fidelity & Guaranty Co. should not be followed. This view renders it unnecessary to consider a number of collateral propositions urged by appellant's counsel, chief of which is that the defendant company would not have issued the policy, had it been advised that Syverson and Flindt had become the owners of a majority of the stock.

[3, 4] Appellant also contends that its liability to the plaintiff bank, if any liability existed, was a several liability arising from the several wrongful acts of Flindt and Syverson, respectively, in an amount not exceeding $5,000 as to each, and that the judgment of the court as upon a joint liability is erroneous. So far as we can discover from the record, no such question appears to have been raised at the trial, and we must decline to consider it upon this appeal. But, even if the judgment is technically erroneous, appellant was not prejudiced, for the reason that the judgment is based upon findings of fact to the effect that the Bank of Willow Lakes suffered pecuniary loss by reason of the personal dishonesty of W. G. Syverson in the sum of $5,000 and that the Bank of Willow Lakes suffered pecuniary loss by reason of the personal dishonesty of John Frederick Flindt in the sum of $1,500; the judgment being the aggregate of these two sums, with interest and costs added.

[5] Appellant's next contention is that, even if the bond sued upon was in force, the evidence fails to disclose any loss to the bank resulting from acts of embezzlement, abstraction, or conversion, amounting to personal dishonesty, through any acts of W. G. Syverson during the period covered by the bond. The evidence discloses that the defendant Syverson drew checks upon the State Bank of Bancroft aggregating $5,500, and that these checks were found in possession of the bank at the time the same was taken in charge by the department of banking and finance. There was also evidence tending to show that they were carried in the bank as cash items, and that at or about the time the several checks came into the bank the private account of Walter G. Syverson was credited with amounts corresponding to the amounts of the various checks, and that nothing was ever received by the Bank of Willow Lakes on account of the checks. The evidence also discloses that, at the time the public examiner took possession of the bank, the private account of Walter G. Syverson in the bank was reduced to about $100.

Appellant challenges the probative force and effect of this evidence to sustain the finding of the trial court to the effect that the bank suffered financial loss in the sum of $5,000 by reason of these acts. We are of the view that the evidence is sufficient to sustain the conclusion that W. G. Syverson, in substance and effect, substituted his own worthless checks in lieu of cash in

the bank and appropriated the cash to his own use. Such an act was nothing less than a plain embezzlement of the funds of the bank, and was an act of personal dishonesty insured against by the terms of the bond. The trial court found that Flindt had appropriated and converted to his own use (in other words embezzled) funds of the Bank of Willow Lakes, aggregating $1,500, substituting therefor his two promissory notes, without collateral security or a responsible indorser, and without having first secured the approval of a majority of the directors, properly recorded in the minute book, in violation of section 31, art. 2, c. 222, Laws of 1909. Section 31, so far as material here, reads as follows:

"And no active officer or employe of any corporation transacting a banking business in this state shall be permitted to borrow any of the funds of the bank upon his own note or obligation without having first obtained the approval of a majority of the board of directors of the bank, and the approval, if obtained, shall be properly recorded in the bank's minute book. No such loans shall be made without ample collateral or a responsible indorser. Any individual * * * who shall violate the provisions of this section shall be deemed guilty of embezzlement of the funds of said bank to the extent of said note or obligation so given." etc.

[6] Appellant admits, and states in its brief, that this finding is founded upon two promissory notes, one for $900 and another for $600 signed by defendant Flindt and one S. B. Flindt, his wife, both payable to the Bank of Willow Lakes. Appellant contends that the evidence is insufficient to sustain this finding. The notes were without collateral, or a responsible indorser, and were utterly worthless. Appellant's contention appears to be that the evidence does not show affirmatively that the notes were given for money loaned by the bank to the Flindts. Assuming this to be true, we are of the view that notes, payable to the bank itself, constitute presumptive evidence that they were given for loans of bank funds. Appellant's argument is that the notes may have been given in transactions other than loans by the bank. If so, the burden rests upon defendant to show such facts by way of defense.

Appellant next contends that, even though the notes are worthless and represent a total loss to the bank, yet it does not

appear that such loss was occasioned by any act of embezzlement, abstraction, or conversion by Flindt, amounting to personal dishonesty, within the terms of the bond. Section 31, art. 2. c. 222, Laws of 1909, above quoted, declares that no active officer or employe of the bank shall be permitted to borrow any funds of the bank upon his own note or obligation without the approval of a majority of the board of directors, properly recorded in the bank's minute book, and further provides that "no such loans shall be made without ample collateral or a responsible indorser," and declares that a violation of this section constitutes embezzlement of funds of the bank. There can be no doubt that the bank has sustained a financial loss to the amount of these notes. The statute declares that the loaning of bank funds to an officer of the bank without ample security or a responsible indorser amounts to embezzlement of the funds so loaned. This law was in force when the bond was issued, and is as much a part thereof as though written into the bond. We are of the view that the loan of funds of the bank to himself by an officer of the bank without ample collateral or a responsible indorser amounts to embezzlement, and is such a plain violation of official duty as amounts to personal dishonesty, whether done with or without the permission of the board of directors of the bank.

[7]    Again, appellant contends that it is relieved from liability because the bank failed to notify the company of acts of personal dishonesty of its employes by telegram addressed to its New York office within 10 days after becoming aware of such dishonest acts, and by not giving full particulars thereof by registered letter within 90 days. The findings of the trial court as to the particular wrongful acts upon which the judgment is predicated cover the only matters which are material upon this question. Without reviewing the evidence, all of which we have examined with care, it is sufficient to say we are entirely satisfied that the defendant has waived any defense, if any existed, founded upon these provisions of the bond.

After a careful consideration of the entire record, we are of the view that it discloses no prejudicial error. The judgment and order of the trial court are therefore affirmed.

WHITING. J., not sitting.

GATES, J., (concurring in the result.)    Inasmuch as the persons whose acts were insured bore the same relation to the

bank, both as officers and stockholders at the time of the issuance of the second bond (the bond in suit), that they bore at the time of the loss, it seem unnecessary to me to discuss the question of the change of status between the time of the issuance of the first bond and the time of loss. In my opinion the Surety Company was charged with notice of their status at the time of issuing the second bond. In other respects I concur in the foregoing opinion.