**INSURANCE COMPANY OF NORTH AMERICA, Appellant,**

v.

**Mal GREENBERG and Rose Greenberg, dba Corporate Financing Company, Appellees.**

**No. 9900.**

United States Court of Appeals
Tenth Circuit.

Jan. 14, 1969.

Edgar Fenton, Oklahoma City, Okl. (Robert J. Petrick and Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl., were with him on the brief) for appellant.

Lee B. Thompson and John H. Cantrell, Oklahoma City, Okl. (Cantrell, Douglass, Thompson & Wilson, Oklahoma City, Okl., was with them on the brief), for appellees.

Before LEWIS and HICKEY, Circuit Judges, and THEIS, District Judge.

LEWIS, Circuit Judge.

This appeal is taken from a judgment for $74,652.14 entered in the Western District of Oklahoma against the appellant (I.N.A.) as the issuer of a special fidelity bond naming appellees as additional insureds. Jurisdiction is based upon diversity and trial was to the court. I.N.A. asserts as its principal appellate claim that the court erred in construing the terms of the bond to include coverage to appellees of the particular loss occasioned to them. The general background facts are undisputed.

Prior to October 1964, I.N.A. issued to Oklahoma Steel Corporation[1] (Oklahoma Steel) a fidelity bond designated as a "Blanket Honesty Bond." On October 11, 1964, appellees and Oklahoma Steel entered into a contract which provided for appellees' purchase of Oklahoma Steel's accounts receivable at 85% of their face value and for the assignment by Oklahoma Steel of said accounts to appellees. All accounts so assigned were to be the property of appellees and the Oklahoma Steel agreed to hold money it received on said accounts in trust for appellees. Also as part of the contract Oklahoma Steel was obligated to procure

at Buyer's [appellees] expense, a blanket fidelity bond from an established insurance or bonding company, in an amount not less than $50,000.00, which will protect Buyer against any loss sustained or caused by the fraudulent or dishonest acts, misapplications, misappropriations or conversions, of any of the officers or employees of Customer, acting alone or in collusion with others. If Customer [Oklahoma Steel] owns such a bond, then Buyer shall be added as an additional incured [sic], if permitted by said bonding company; provided, however, that Buyer shall pay any increase in premiums resulting from it being added as an additional insured, or an increase in the face amount of said bond.

On October 22, 1964 in furtherance of said provision an endorsement was attached to the bond previously issued by I.N.A. to Oklahoma Steel naming appellees as additional insureds and raising the policy limits from $50,000 to $100,000. The endorsement in its pertinent part reads:

"1. The attached bond shall be construed to cover any direct loss which Mal Greenberg, Rose Greenberg, Carolyn Wolfberg and Robert Greenberg DBA Corporate Financing Company shall sustain of money, securities or other property belonging to said

---

1. Oklahoma Steel and its president were defendants below but admitted liability.

Mal Greenberg, Rose Greenberg, Carolyn Wolfberg and Robert Greenberg DBA Corporate Financing Company through the fraudulent or dishonest misapplication, misappropriation or conversion committed by any one or more of the Employees as defined in the attached bond, acting alone or in collusion with others, while the bond is in force as to the Employee or Employees causing such loss.

\*    \*    \*    \*    \*    \*

3. The attached bond shall be subject to all its agreements, limitations and conditions except as herein expressly modified."

Pursuant to the contract with Oklahoma Steel, appellees purchased between October 24, 1964 and June 2, 1965, a large number of accounts receivable through payment in cash or adjustments of an accounting nature. On July 20, 1965, appellees filed a proof of loss with I.N.A. claiming a loss of $74,652.14 resulting from the dishonesty and fraud of W. H. Hoster, (president, director, and general manager of Oklahoma Steel) and other unidentifiable employees. The proof of loss set forth in considerable detail the specifics of the amount of loss and the transactions premising the claim. On October 8, 1965, I.N.A. rejected the claim on the ground that "this is a debtor creditor relationship and there is no evidence of any employee dishonesty."

Evidence at the trial clearly established that appellees had been defrauded through the acts of Hoster and Robert Arnold, a director and secretary of Oklahoma Steel. These acts consisted of the assignment of fictitious accounts, substitution of accounts, the commingling of funds collected in behalf of appellees (trust funds) with those of Oklahoma Steel, misappropriation of said funds for direct corporate use and indirect employee benefit and the false reporting to appellees of collections.

We can find no merit to any aspect of I.N.A.'s argument claiming non-coverage of appellees' loss under the specific terms of the bond. The insuring clause above set forth clearly provided protection to appellees for a direct loss of money occasioned "through the fraudulent or dishonest misapplication, misappropriation or conversion" of monies by any employee of Oklahoma Steel. Although the classic loss under such a provision may well be an employee embezzlement for direct personal benefit we can read no such limitation into this bond. Surely the obtaining of appellees' money through fictitious assignments and the conversion of trust monies paid upon valid accounts constituted both fraud and dishonesty. And the money so obtained, after commingling with Oklahoma Steel's own money, indirectly reached the errant employees through payment of their corporate salaries. Nor does the imposition of liability under the insuring clause result, as I.N.A. asserts, in a judicial conversion of the bond into a contract performance bond. The latter would be effective under any admitted or proven failure to perform; the subject bond limited liability to loss resulting from dishonesty directed at appellees.[2]

I.N.A. also contends that Hoster and Arnold were not employees of Oklahoma Steel as defined in Section 3 of the bond. Under Oklahoma law all provisions of a surety contract must be liberally construed against the surety. 18 Okl.St.Ann. § 483;[3] N. O. Nelson Mfg. Co. v. McDougal, 171 Okl. 477, 43 P.2d 399. We need not, however, place

---

2. The assignments to appellees by Oklahoma Steel were with recourse. A performance bond would cover Oklahoma Steel's simple financial inability to respond to this obligation; the subject bond would not.

3. 18 Okl.St.Ann. § 483 provides: "The rule of the common law requiring a strict

construction of the obligations of a surety shall have no application to the obligations of a surety or guarantor or indemnitor for hire, but all such obligations shall be liberally construed in accordance with the rules of the general law applicable to policies of insurance."

special emphasis upon this statutory dictate for the unambiguous coverage of the bond and endorsement, as well as their purpose, clearly covers the acts of Hoster and Arnold. Section 3 of the bond defines employee as

" * * * one or more of the natural persons (except directors or trustees of the Insured, if a corporation, who *are not also officers or employees thereof in some other capacity*) while in the regular service of the Insured in the ordinary course of the Insured's business during the term of this bond, and whom the Insured compensates by salary, wages, and/or commissions and has the right to govern and direct in the performance of such service, * * * " (emphasis added)

and it is clear to us that this provision was intended to exclude from the definition of "employee" only those directors who functioned as outside directors and not those who functioned as both a director and officer and who received a salary for services rendered in such capacity. Nor can it be said that Hoster and Arnold are excepted from said definition because they governed rather than were governed by the corporation for they were neither the sole directors nor the sole or majority shareholders of Oklahoma Steel; accordingly, unlike Kerr v. Aetna Casualty & Surety Co., 4 Cir., 350 F.2d 146, the control of the insured did not lie solely in these officers' hands. Oklahoma Steel was a closely held corporation but an entity operating completely beyond the sole control of Hoster and Arnold.

As an affirmative defense to recovery of the subject judgment I.N.A. asserts that the evidence shows that appellees' loss was incurred through transactions with Oklahoma Steel occurring after discovery of employee dishonesty and that such loss was thus not within the obligation of the bond.[4] The trial court, however, specifically found the fact to be otherwise and

" * * * that the plaintiffs [appellees] did not discover the fraud and fail to report the same promptly to the defendant, Insurance Company of North America. And as soon as the plaintiffs became suspicious of fraud they immediately reported it to said defendant surety, * * *

There was nothing leading up to or including the taking of Schedule 16 by the plaintiffs or the taking by plaintiffs of Schedule 24 (designed to and bettering the financial situation and acquiesced in by the insurer) from the defendant, Oklahoma Steel Corporation, or otherwise, sufficient to charge plaintiffs with knowledge that there had been any effective breach of the bond. As soon as plaintiffs became aware of this, notice was given to the insurer and demand was made upon the bond."

The finding is in accord with the evidence. On May 19 appellees discovered that Oklahoma Steel had accepted steel rather than money payment upon an assigned account. Appellees discussed this incident with I.N.A. and were informed that the carrier did not consider the incident to be wrongful conduct. The continuation of business between appellees and Oklahoma Steel was with I.N.A.'s knowledge and consent although accompanied by the caution that anything else that looked wrong should be immediately reported to I.N.A. This appellant did when the fictitious nature of the assignments became known. The evidence is clearly sufficient to support the trial court's finding and being so will not be disturbed. Rule 52(a), Fed.R.Civ.P.;

4. Section 11 of the bond provides: "This bond shall be deemed canceled as to any Employee: (a) immediately upon discovery by the Insured, or by any partner or officer thereof not in collusion with such Employee, of any fraudulent or dishonest act on the part of such Employee; * * *"

Raulie v. United States, 10 Cir., 400 F. 2d 487; Hicks v. Town of Hudson, 10 Cir., 390 F.2d 84.

Other contentions of appellant have been considered and are similarly without merit.

Affirmed.