**GENERAL FINANCE CORPORATION,**
Bankrupt, by Ronald W. Wright,
Trustee, Plaintiff,

v.

**The FIDELITY AND CASUALTY COM-
PANY OF NEW YORK, Defendant.**

No. CIV68–59S.

United States District Court,
D. South Dakota, S. D.

April 15, 1970.

**354**

Gale B. Braithwaite, of Braithwaite, Cadwell & Braithwaite, Sioux Falls, S. D., and Delvin N. J. Welter, Yankton, S.D., for plaintiff.

Robert C. Heege, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., for defendant.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

Ronald W. Wright, as Trustee for the bankrupt General Finance Corporation, a South Dakota corporation with its principal place of business in Yankton, South Dakota, instituted this action in state court against the defendant Fidelity and Casualty Company of New York, a New York corporation having its principal place of business in a state other than South Dakota, to recover under a fidelity bond issued by Fidelity to General Finance. The Trustee alleges that General Finance suffered financial loss well in excess of $10,000 as a result of the fraudulent or dishonest acts of its president, Fred H. Leach. The defendant removed to this court on the basis of diversity of citizenship.

For several years prior to 1966, Fred H. Leach had been a principal figure in the economy of Yankton, South Dakota. As the majority stockholder, director and president of at least six corporations which had their general offices in the same office building in Yankton, Leach was instrumental in keeping money and credit circulating throughout the community. Among the corporations were: General Finance Corporation, which made large loans to various individuals and enterprises; Credit Investors Corporation, a small loan company which also purchased and sold General Finance commercial paper; Fred H. Leach Agency, a general insurance agency writing casualty and other types of insurance; Dakota Underwriters, Inc., which managed several insurance companies; Yankton Development Company, a wholly owned subsidiary of General Finance Corporation which developed property in the Yankton area; and Fort Dakota, Inc., which owned and operated a local tourist attraction.

The defendant Fidelity and Casualty Company of New York issued a fidelity bond in 1948 which protected General Finance against loss through any "fraudulent or dishonest acts" by its employees. The limit of liability was originally $25,000, but was increased to provide coverage in the amount of $150,000 during all times material to this action. When the bond was initially issued, Leach and another were specifically excluded from coverage under the employee dishonesty provisions by an endorsement issued with the policy. Upon request by Leach, the restrictive endorsement was canceled in 1953.

After suffering financial losses for several years, General Finance collapsed in 1966. The Trustee who was appointed to recover the assets of the bankrupt corporation gave preliminary notice to Fidelity that his inspection of the books and records of General Finance had revealed a possibility of loss caused by employee dishonesty. On June 21, 1967, the Trustee submitted detailed proofs of loss in excess of $3,000,000 which he claimed had resulted from fraudulent or dishonest acts of Fred Leach which were covered by the provisions of the bond. Upon Fidelity's refusal to pay the limits of its coverage, the Trustee brought suit to recover the policy limits of $150,000, with interest, and attorneys' fees.

In this case as in all cases in which jurisdiction is founded on diversity of citizenship, the Court must resort to South Dakota law in resolving the legal issues. 28 U.S.C.A. Sec. 1332; Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290 (1938). As this case is one arising under an insurance contract, the Court is cognizant of the decisions of the South Dakota Supreme Court which state that the terms of the policy are to be construed "liberally in favor of the insured and strictly against the insurer," but that the policy

must be considered in its entirety in an effort to determine the intention of the parties as expressed in the contract. Thompson v. State Automobile Insurance Assn., 70 S.D. 412, 18 N.W.2d 286 (1945).

The bond was issued to protect General Finance from the dishonest acts of its employees and did not protect the creditors of the corporation from the fraudulent or dishonest acts of the directors or stockholders. In bringing this action the Trustee acts on behalf of General Finance, and his right to recover is predicated upon the right of the corporation itself. Kerr v. Aetna Casualty and Surety Company, 350 F.2d 146, 150 (4th Cir. 1965).

The policy provides that the defendant will "indemnify the Assured [General Finance] for all loss sustained * * *

1. Through any fraudulent or dishonest act or acts, committed anywhere by any of the Employees * * * *"

Employees whose acts are covered under the bond are defined to be

"[O]ne or more of the natural persons (except directors or trustees of the Assured, if a corporation, who are not also officers of employees thereof in some other capacity) while in the regular service of the Assured in the ordinary course of the Assured's business during the Policy Period and whom the Assured compensates by salary, wages and/or commissions *and has the right to govern and direct in the performance of such service * * *"* (emphasis added)

At first glance it would appear that Leach would qualify as an employee as he was compensated for his services as president of General Finance. However, the added criteria is that the corporation have "the right to govern and direct" a covered employee in the performance of his services. Although the records may be incomplete in this regard, the evidence indicates that Leach personally owned at least sixty per cent of the voting stock of General Finance.

As the majority stockholder, director and president of General Finance, Leach was in reality not subject to the degree of control by General Finance that the defendant Fidelity contemplated under the definition of "employee" in the bond. The evidence is clear that he was without direction by the corporation in the day-to-day operation of the corporation. The testimony of various witnesses called by the plaintiff indicates that even though Leach was only one member of a board of directors which at times was composed of as many as six members, the board actually made no independent decisions at their infrequent meetings, but served only to "rubber-stamp" the actions of Leach. There is no suggestion that any of the members of the board or any of the employees of General Finance were aware of the true nature of the events which have given rise to the allegations by the Trustee.

In an early decision, *Farmers and Merchants State Bank of Verdon v. United States Fidelity and Guaranty Co.,* 28 S.D. 315, 133 N.W. 247 (1911), the South Dakota Supreme Court held that a majority stockholder who acted as cashier in a bank could not be considered an employee covered under a fidelity bond because he would not be "subject to the restraining influence of efficient supervision." The court went on to state that "an undertaking insuring a person against his own dishonesty would be, to say the least, a novel and unusual contract. * * * The object of the undertaking was to insure an employer against the fraudulent acts of an employee, not to insure an employer against his own fraudulent acts." This decision has been cited as authority for the statement in a leading work that "the owner of a controlling interest in an insured corporation is not included in the term 'employees' covered by a fidelity bond." 35 Am.Jur.2d Fidelity Bonds and Insurance § 16, at 515 (1967). It should be noted that in the *Farmers and Merchants* case, the bond itself was silent as to the effect of ownership of a controlling interest in the corporation

and was also silent as to the condition that the corporation have the right to govern and control the employee in the performance of his duties.

In a later case, Bank of Willow Lakes v. Syverson, 43 S.D. 295, 178 N.W. 989 (1920), the South Dakota Supreme Court considered a parallel fact situation but declined to apply the rule announced in the *Farmers and Merchants State Bank* decision, supra. The court reasoned that if majority stock ownership was a factor which the insurer felt would increase its hazard, the insurer had an obligation to inquire in its application or insert a provision in the policy concerning stock ownership. Since the insurer had failed to take those measures, the court refused to read such a limitation into the contract between the parties. It is significant that the bond in this case as well as the *Farmers and Merchants* case did not contain a clause which stated that a covered employee was one subject to the direction and control of the insured corporation.

In the two cases previously cited, the South Dakota Supreme Court discussed the fact that the employee in question became the majority stockholder some time after issuance of the bond and no notice of such change in status was given to the insurer. In this case, Leach was apparently the majority stockholder at the time he applied for coverage under the bond. The original application for the bond in this case was not introduced into evidence and the Court cannot speculate as to the questions presented in the application. Despite this factual distinction, the cases are important as a reflection of the attitude of the South Dakota Supreme Court in regard to the construction of fidelity bonds and the obligations of the parties to the bond.

Careful examination of the above South Dakota cases which deal with the issue of coverage of a majority stockholder under a fidelity bond leads this Court to the conclusion that under the South Dakota decisions, the defendant Fidelity has sufficiently excluded a majority stockholder from coverage under the bond by defining covered employees as those whom the corporation "has the right to govern and direct in the performance" of their services. A majority stockholder cannot meet such a test. As we have previously stated, Leach was not controlled by the corporation, the corporation was controlled by him. In such a circumstance, he is not covered under the bond.

In Kerr v. Aetna Casualty and Surety Co., supra, the Fourth Circuit Court of Appeals recently held that two persons who were sole shareholders and sole directors while acting as chief executive officers of the insured corporation were not within the definition of employees "whom the Insured has the right to govern and direct" as used in the context of the fidelity bond.

Plaintiff urges that Leach was not the sole shareholder and sole director of General Finance and that, therefore, the rationale of Insurance Company of North America v. Greenberg, 405 F.2d 330 (10th Cir. 1969), is more appropriate to the present facts. However, the court in *Greenberg* specifically noted that the suspect employees were not majority shareholders and that the corporation was operating "completely beyond the control" of the employees whose acts were questioned.

Having considered the leading cases relied upon by the parties, the Court is of the opinion that the reasoning of the *Kerr* case should be followed in the present situation as the evidence reflects the financial and operational domination of General Finance by Leach. Other cases proceeding on varied legal theories have denied recovery under a fidelity bond where the person whose acts allegedly caused loss to the corporation was in substantial control of the corporation. *Cf. Phoenix Savings and Loan, Inc. v. Aetna Casualty and Insurance Co.*, 266 F.Supp. 465, 471 (D.Md.1966), reversed and remanded 381 F.2d 245 (4th Cir. 1967, 302 F.Supp. 832 (D.Md.1969); McKee v. American Casualty of Reading, Pennsylvania, 316 F.2d 428 (5th

Cir. 1963). Despite the varied reasons advanced for the results in these decisions, the rationale is consistent that a person who is the majority shareholder and is in actual control of the operation of the corporation will not be allowed to profit from his wrongdoing by recovering under a fidelity bond.

When the bond was first issued, Leach was specifically excluded from coverage by an endorsement and a reduced premium was charged. At a later date, prior to any of the acts alleged to have caused loss, Leach as president of General Finance requested that he be covered under the bond. Fidelity responded by canceling the endorsement which excluded Leach and apparently increased the premium. The plaintiff asserts that by this act Fidelity has conceded that Leach was covered as an employee under the bond. However, plaintiff overlooks the point that Fidelity did not agree to insure Leach under *any and all* circumstances, but rather agreed to insure Leach only if he came within the definition of employee as used in the bond. The Court has concluded that he did not come within that definition.

Although the insurer may have a responsibility to inquire into circumstances which it feels will increase its risk before issuing the bond, there is no evidence indicating whether or not an inquiry was made as to stock ownership in this case as the application for the bond was not introduced in evidence. Plaintiff has not asserted that Fidelity is estopped to claim that Leach's majority stock holding increased its risk because it did not inquire as to stock ownership or because the company represented that a majority stockholder would be covered under the bond. As the record is bare on this point, the Court does not feel that the issue has been properly raised in this case and expresses no opinion as to what its determination will be if appropriate facts are so presented in a future case. This decision is based on the language of the bond standing alone.

It is the opinion of the Court that Leach was not an "employee" of General Finance within the coverage of the fidelity bond issued by the defendant Fidelity and Casualty Company of New York and that the plaintiff Trustee has no right of recovery against this defendant.

The Court feels obliged nonetheless to comment upon the proof of fraudulent or dishonest acts by Leach as alleged by the plaintiff. The rule in South Dakota is that fraud may be proved by a preponderance of the evidence, but that the evidence must be clear and convincing to overcome the presumption of honesty. Kunkel v. United Security Ins. Co., S.D., 168 N.W. 2d 723 (1969); Northwest Realty Co. v. Colling, 82 S.D. 421, 147 N.W.2d 675 (1966); Gray Construction Co. v. Fantle, 62 S.D. 345, 253 N.W. 464 (1934). *See also* Hardware Mutual Ins. Co. of Minn. v. Jacob Hieb, Inc., 146 F.2d 447, 452 (8th Cir. 1945).

In many instances in the present action, the plaintiff has done no more than introduce evidence that General Finance has suffered a loss. The defendant has elicited testimony on cross examination of the plaintiff's witnesses that many of the alleged losses may have been the result of bona fide business transactions. The fact that the corporation sustained a loss or that the loss may have been the result of improvident business judgment is not sufficient proof to establish recovery under the bond. The Court is of the opinion that in all of the claims the plaintiff has failed to prove by a preponderance of the evidence that losses to the corporation were caused by "fraudulent or dishonest" acts of Leach.

The plaintiff has proved that $35,000 was paid in dividends to stockholders from 1955 to 1965 when General Finance was operating at a loss. However, the payment of dividends is the act of the board of directors of the corporation, and when Leach and the board de-

clared dividends they were not acting as employees within the definition of the bond. The other directors were clearly not covered under the bond and the same exclusion would apply to Leach when he was acting solely as a director and not as president of General Finance—even if the Court had determined that coverage existed for Leach as an employee of General Finance. Georgia Casualty and Surety Co. v. Seaboard Surety Co., 210 F.Supp. 644, 651 (N.D.Ga.1962), affirmed per curiam 327 F.2d 666 (5th Cir. 1964).

The foregoing memorandum decision shall constitute the Court's findings of fact and conclusions of law, pursuant to Rule 52 of the Federal Rules of Civil Procedure.