674 P.2d 869

**INDUSTRIAL INDEMNITY COMPANY, a California corporation, Plaintiff-Appellee,**

v.

**Gust GOETTL; Adgus Properties, a partnership composed of Adam D. Goettl and Gust Goettl; and Billy Clyde Hartman, Defendants-Appellants,**

v.

**GREAT AMERICAN INSURANCE COMPANY, a foreign corporation, Defendant-Appellee.**

**GREAT AMERICAN INSURANCE COMPANY, a foreign corporation, Crossclaimant-Cross-Appellant,**

v.

**ADGUS PROPERTIES, a partnership composed of Adam D. Goettl and Gust Goettl, Defendant-Cross-Appellee.**

No. 1 CA–CIV 5729.

Court of Appeals of Arizona, Division 1, Department D.

Sept. 1, 1983.

Reconsideration Denied Nov. 9, 1983.

Review Denied Dec. 20, 1983.

Teilborg, Sanders, Haga & Parks, P.C. by John C. Gemmill and James A. Teilborg, Phoenix, for Industrial Indem. Co.

Snell & Wilmer by Robert J. Gibson and John J. Bouma, Phoenix, for Goettl and Adgus Properties.

Langerman, Begam, Lewis & Marks by Samuel Langerman and Thomas F. Dasse, Phoenix, for Hartman.

Rawlins, Burrus & Lewkowitz, P.C. by James W. Hill and John S. Schaper, Phoenix, for Great American Ins. Co.

## OPINION

HAIRE, Presiding Judge.

The issues raised in this appeal involve questions concerning coverage under several insurance policies for an accident which occurred on premises conveyed by the insured 16 years before the accident. The facts giving rise to this litigation are as follows.

From 1950 to 1960, Gust and Adam Goettl were officers and sole stockholders in International Metal Products Co. and partners in Adgus Properties. During this period, International Metal constructed a warehouse for Adgus Properties which then leased the building back to International Metal. In 1960 the Goettls sold their interest in International Metal, and, as partners in Adgus, sold the building to McGraw-Edison Co. Sixteen years later Billy Hartman, an employee of McGraw-Edison, fell through the roof of the warehouse and sustained permanent quadriplegic injuries. Hartman's subsequently filed action against the Goettls and Adgus Properties alleges that the Goettls had negligently constructed the roof and had negligently sold the building without disclosing the dangerous condition of the roof to McGraw-Edison.

The insurance policies involved in this appeal were in effect when Hartman was injured. Industrial Indemnity Insurance Company (Industrial Indemnity) had issued a "Comprehensive Personal Catastrophe Liability Policy" to Gust Goettl. Great American Insurance Company (Great American) had issued two policies: (1) a homeowners insurance policy to Gust Goettl; and (2) a policy providing owners', landlords', and tenants' liability insurance coverage to Adam and Gust Goettl doing business as Adgus Properties. The Goettls presented the complaint to both insurers; Great American refused to defend and Industrial Indemnity offered to defend with a reservation of all rights to withdraw.

Subsequently, Industrial Indemnity filed a complaint for declaratory relief seeking an order declaring that no coverage existed under its policy and that there was no duty to defend. In a counterclaim against Industrial Indemnity and a cross-claim against the Goettls, Great American similarly sought an order declaring that no coverage existed under its policies and that there was no duty to defend.

The trial court entered summary judgment for Industrial Indemnity and found no obligation pursuant to its insurance policy to defend or provide liability coverage for Hartman's claims against Gust Goettl. The trial court also entered summary judgment in favor of Great American on one of its policies, finding no obligation to defend or provide liability coverage pursuant to the homeowners policy. Both Goettl and Hart-

man (appellants) have appealed from these summary judgments.

On the remaining policy, Great American's owners', landlords', and tenants' liability policy, the trial court entered summary judgment against the insurer and found an obligation to defend and provide coverage for the Hartman accident. Great American has filed a cross-appeal from that judgment.

We proceed to discuss the contentions raised on appeal by the parties relating to each of the insurance policies.

## GREAT AMERICAN HOMEOWNERS POLICY

In support of the trial court's judgment denying coverage under its homeowners policy, Great American contends that the accident arose out of "business pursuits" and that coverage was excluded by a provision which stated that the policy did not apply:

> "(d) to bodily injury or property damage arising out of business pursuits of any Insured except activities therein which are ordinarily incident to non-business pursuits."

Appellants recognize the existence of the "business pursuits" exclusion, but contend that it only excludes coverage for liability arising from business pursuits in which the insured was engaged during the policy term, and that it does not exclude liability arising from business pursuits engaged in by the insured prior to the term of the policy. They point out that the policy does not define "business pursuits" or specifically establish a time frame relating to the excluded coverage. They urge that because the coverage actually extended by the policy is limited to injuries caused by an "occurrence" during the policy term, similarly, the exclusion should be limited to business pursuits engaged in during the policy term. They then argue that because Goettl in 1960 had sold his interest in International Metal, which constructed the warehouse, and the building itself, he was no longer involved in that "business pursuit" within

the meaning of the exclusion when Hartman was injured.

■ We find no support in the policy for the limitation which appellants would engraft on the unambiguous, unlimited language used in the exclusionary clause. We first note that the exclusion is stated without any time limitation and that there are no other provisions in the policy which expressly or impliedly limit the exclusion to business pursuits engaged in by the insured during the policy term. An exclusion is intended to negate all coverage for injuries arising from the particular conduct of the insured described in the exclusionary clause. The fact that the coverage actually extended under the policy is limited to "occurrences" during the policy term has no relevance to non-coverage of excluded conduct. The function of the "occurrences" limitation is to set a temporal limit on the insurer's liability for the insured's culpable conduct otherwise admittedly covered. If coverage for certain conduct is excluded, the time of the "occurrence" is simply immaterial. We conclude that the "business pursuits" exclusion contained in Great American's homeowners policy precludes coverage for injuries arising out of a business pursuit regardless of when the insured engaged in such activity.

Appellants next contend that the exclusion does not apply because Hartman's injuries did not arise out of business pursuits by Goettl. They argue that Goettl's ownership and rental of the warehouse through the Adgus partnership and the subsequent sale of the building did not constitute a business pursuit. Appellants compare Goettl's involvement to an investment which they urge is outside the scope of a "business, trade, profession, or occupation." Alternatively, appellants contend that the term "business pursuits" is ambiguous and must be construed against the insurer.

■ Appellants' restriction of "business pursuits" to a "business, trade, profession, or occupation" is too narrow a definition. Rather, "business pursuits" denotes "a continued or regular activity for the purpose of earning a livelihood such as a trade, profes-

sion, or occupation, or a commercial activity." Annot., 48 A.L.R.3d 1096, 1100 (1973). Many jurisdictions have adopted this interpretation, requiring continuity and profit motive.

" 'To constitute a business pursuit, there must be two elements: first, continuity, and secondly, the profit motive; as to the first, there must be a customary engagement or a stated occupation; and, as to the latter, there must be shown to be such activity as a means of livelihood, gainful employment, means of earning a living, procuring subsistence or profit, commercial transactions or engagements.' "

*Krings v. Safeco Insurance Co.,* 6 Kan. App.2d 391, 393, 628 P.2d 1071, 1074 (1981) (quoting *Fadden v. Cambridge Mutual Fire Insurance Co.,* 51 Misc.2d 858, 862, 274 N.Y. S.2d 235, 241 (1966)). Appellants' interpretation suggests that only the principal activity of an insured—his business, trade, profession, or occupation—is excluded under the policy. The use of the plural "pursuits" suggests a more expansive construction. *See Krings, supra,* at 395 n. 1, 628 P.2d at 1075 n. 1. Contrary to appellants' assertion, we do not find that the term is ambiguous.

■ Even if we accept appellants' contention and assume that under certain circumstances an investment might not constitute a "business pursuit," we find the comparison unsound. In depicting Goettl's involvement with the warehouse as an investment, appellants are considering Goettl's activity in a vacuum. From 1950 to 1960, Goettl was an officer and one of two stockholders in International Metal, the company which constructed and maintained the building. He was one of two partners in Adgus Properties which owned the building and leased it to International Metal for use

as a receiving and storage warehouse. Goettl did not just receive rent as part owner of the building. Rather, the warehouse was an integral part of the operations of International Metal, a business in which Goettl actively participated as plant superintendent and vice-president. Clearly, Goettl's involvement in International Metal, which used the building, and in Adgus Properties, which sold the building to McGraw-Edison, was the kind of commercial activity which is described in the policy as "business pursuits."

■ Furthermore, Hartman's injury arose out of these business pursuits. Hartman's complaint alleged negligent design, construction, and maintenance of the roof of the warehouse and negligent sale of the building without disclosing the dangerous condition of the roof. These allegations involve specific acts by Goettl while he was engaged in the operation and sale of his business enterprise. Thus, Hartman's injury allegedly resulting from these acts arose out of Goettl's business pursuits.

■ In summary, we find that Goettl was engaged in "business pursuits" within the meaning of the exclusion in Great American's homeowners policy. Hartman's injuries sustained in the fall through the roof of the warehouse constructed and used by International Metal and owned by Adgus Properties arose out of Goettl's business pursuits. Consequently, the trial court correctly found that Great American had no obligation pursuant to its homeowners policy to defend or provide liability coverage for Hartman's claims.[1]

## INDUSTRIAL INDEMNITY COMPREHENSIVE PERSONAL CATASTROPHE LIABILITY POLICY

Like Great American, in denying coverage under its policy Industrial Indemnity

---

1. In their reply brief, appellants state that the business pursuits exclusion includes an exception resulting in coverage for activities "which are ordinarily incident to non-business pursuits." They then argue that the sale of the warehouse, the activity out of which Hartman's injury arose, was an activity ordinarily incident to non-business pursuits. We note that this

argument was not raised in appellants' opening brief or discussed in Great American's answering brief. Because a reply brief shall be confined to rebuttal of points urged in the answering brief, we do not consider or address this argument. *See* Rule 13(c), Rules of Civil Appellate Procedure, 17A A.R.S.

also relies upon a "business pursuits" exclusion which provides that the policy shall not apply:

"(h) to any business or business pursuits of an insured or to property (other than farms) on which a business is conducted by an insured . . ."

In addition to the arguments appellants made in connection with the business pursuits exclusion in the Great American policy, appellants advance other reasons for finding the Industrial Indemnity exclusion inapplicable. They argue that the use of the word "is" in the phrase "on which a business is conducted" imparts present tense to the entire exclusion. Appellants further find support for this construction in the language of the application for insurance. The application inquired as follows:

"6. Is coverage requested on this policy for any business pursuits or commercially owned, leased or rented properties? [Boxes-Yes/-No]

If 'Yes' describe details including primary liability insurance *in effect*."

(Emphasis added).

Thus, appellants argue, Industrial Indemnity inquired only about the coverage for business activities presently owned by the applicant. Appellants maintain that Goettl interpreted this concern with other existing policies to mean that the comprehensive insurance policy applied for would exclude only those activities already covered, i.e., that the exclusion would apply only to present business pursuits.

■ We find that the exclusion expressly and unambiguously applies to *any* business or business pursuits of an insured, past or present. Appellants' argument that the present tense term "is" pertains to the entire exclusion is illogical. The exclusion plainly states that the policy does not apply (1) to any business or business pursuits of an insured or (2) to property on which a business is conducted by an insured. These are distinct categories.

■ The court must construe a contract of insurance according to its terms where those terms are plain and unambigu-

ous. *Ranger Insurance Co. v. Lamppa*, 115 Ariz. 124, 125, 563 P.2d 923, 924 (App.1977); *see Stephan v. Allstate Insurance Co.*, 26 Ariz.App. 367, 370, 548 P.2d 1179, 1182 (1976). Furthermore, the intention of the parties as derived from the language of the policy prevails in interpreting the policy. *Rodemich v. State Farm Mutual Automobile Insurance Co.*, 130 Ariz. 538, 539, 637 P.2d 748, 749 (App.1981). Having found the exclusion clearly applicable to any business or business pursuits, we need not consider the subjective intentions of Goettl inferred from the inquiries made in the application or Goettl's responses.

■ In summary, we have previously found that Goettl's connection with the warehouse where Hartman fell is within the scope of "business pursuits." We conclude that the Industrial Indemnity personal liability policy clearly does not apply to such activities. Consequently, the trial court did not err in finding that Industrial Indemnity has no obligation pursuant to its policy to defend or provide coverage for Hartman's claims.

Moreover, our finding that the exclusions in the Great American homeowners policy and the Industrial Indemnity personal liability policy are applicable to the circumstances of this case enforces the respective contracts as made by the parties. In *Kepner v. Western Fire Insurance Co.*, 109 Ariz. 329, 509 P.2d 222 (1973), the Arizona Supreme Court recognized that a homeowners policy appropriately excludes risks associated with business activities. The court stated:

"Western's policy is low premium protection designed to insure a homeowner against the hazards arising out of the operation and maintenance of his home. In this type of policy, certain risks are specifically excluded because they are not embraced within the course of a homeowner's normal activities. Business activities present additional risks over and beyond the ordinary and usual hazards to be found in the operation and maintenance of a home. They are not within

the contemplation of or intended to be within policy coverage."

109 Ariz. at 330, 509 P.2d at 223 (citation omitted).

One commentator discusses the rationale for excluding coverage for income-producing activities as follows:

"The comprehensive personal liability policy (and the several package policies that incorporate it) is designed to insure primarily within the personal sphere of the policyholder's life and to exclude coverage for hazards associated with regular income-producing activities. The hazards of personal activities are generally shared by, and common to, all those that constitute the pool being insured, but the hazards of their respective income-producing activities are diverse and involve different legal duties and a greater risk of injury or property damage to third parties than personal pursuits. Business activities can be insured by other types of policies. Their exclusion from personal liability policies avoids areas requiring specialized underwriting, prevents unnecessary coverage overlaps, and helps keep premiums low."

Frazier, "The Business-Pursuits Exclusion Revisited," 649 Ins.L.J. 88, 88–89 (1977) (footnote omitted).

Great American and Goettl contracted specifically for homeowners insurance and coverage of the particular personal risks associated with a homeowner's activities. Industrial Indemnity and Goettl contracted for a policy of personal liability insurance. The inclusion in the policies of a business pursuits exclusion indicates that there was no intent that either policy provide the more expansive coverage for risks associated with business or commercial activities. The insurer should be liable only for risks intended to be assumed. *See Harbor Insurance Co. v. United Services Automobile Association,* 114 Ariz. 58, 61, 559 P.2d 178, 181 (App.1976); *cf. McCollum v. Insurance Co. of North America,* 132 Ariz. 129, 132, 644 P.2d 283, 286 (App.1982) (no liability which insurance company has not contracted to assume).

## GREAT AMERICAN OWNERS', LANDLORDS', AND TENANTS' LIABILITY POLICY

The sale in 1960 to McGraw-Edison of International Metal and buildings used by International Metal owned by Adgus Properties expressly excluded real estate known as the "Thirty-First Avenue Property" which remained the property of the Adgus partnership. In 1976, Adgus obtained an owners', landlords', and tenants' liability insurance policy on the "Thirty-First Avenue Property" which provided liability coverage for an occurrence arising out of the ownership, maintenance, or use of the "insured premises." The term "insured premises" was defined in the policy as:

"(1) the premises designated in the declarations, (2) *premises alienated by the named insured* (other than premises constructed for sale by the named insured), if possession has been relinquished to others, and (3) premises as to which the named insured acquires ownership or control and reports his intention to insure such premises under this policy ..."

(Emphasis added).

This policy was in effect when Hartman was injured.

Great American contends that the warehouse where Hartman fell was not an "insured premises" under the policy because property sold prior to the effective date of the policy was not covered. Great American argues that the only function of the "premises alienated" category is to continue coverage during the policy period for the property designated in the policy declarations when that property is alienated by the insured.

Such argument ignores the express language of the policy, however. If Great American intended that the category "premises alienated by the named insured" as used in clause (2) of the definition of "insured premises" refer only to premises designated in the declarations, then clause (2) is surplusage. Clause (1) provides coverage for "premises designated in the policy

declarations." Thus, clause (1) clearly is broad enough to include designated premises that are alienated by the insured. The court must construe an insurance contract as a whole so as to give effect to all of its provisions. *See, e.g., Sparks v. Republic National Life Insurance Co.,* 132 Ariz. 529, 536, 647 P.2d 1127, 1134, *cert. denied,* 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982); *Droz v. Paul Revere Life Insurance Co.,* 1 Ariz.App. 581, 583, 405 P.2d 833, 835 (1965). Thus, clause (2) as written establishes a category of property for which there is liability coverage separate and distinct from the category of property in clause (1).

 Furthermore, the warehouse where Hartman fell is clearly within the meaning of "premises alienated by the named insured." As we have previously noted, an insurance contract must be construed according to its terms where those terms are plain and unambiguous. *See Ranger Insurance Co. v. Lamppa, supra; Stephan v. Allstate Insurance Co., supra.* Thus, the policy plainly provides coverage for injuries arising out of the use of the warehouse sold by the insured Adgus Properties. Great American contends that such coverage imposes a risk on the insurer which was not contemplated by the parties to the contract. However, if Great American wanted to limit coverage of "premises alienated" to those premises listed in the declarations, it should have used language which clearly communicated that limitation. *See Sparks v. Republic National Life Insurance Co., supra,* 132 Ariz. at 535, 647 P.2d at 1133.

Great American also contends that Adgus Properties had no insurable interest in the building where Hartman fell when it acquired the owners', landlords', and tenants' policy. We disagree.

"An insurable interest in the property covered by liability insurance is usually not required, in the same sense as in property insurance, since the risk insured against is not based on ownership of property, but upon loss and injury caused by its use for which the insured might be liable. Thus almost any hazard which may expose a person to pecuniary loss may constitute a valid insurance interest."

6B John Appleman & Jean Appleman, Insurance Law and Practice § 4253, at 18–19 (1979) (footnote omitted).

In summary, we find that the building where Hartman fell is an "insured premises" covered by the Great American owners', landlords', and tenants' liability policy. Consequently, the trial court correctly found that Great American is obligated pursuant to that policy to provide liability coverage for Hartman's claims against Adgus Properties.

The judgment of the trial court is affirmed.

EUBANK and MEYERSON, JJ., concur.