709 P.2d 559

**EMPLOYER'S ADMINISTRATIVE SERVICES, INC., an Arizona corporation; and Chester Flaxmayer, as Receiver of Employer's Administrative Services, Inc., Plaintiffs-Appellants,**

v.

**The HARTFORD ACCIDENT & INDEMNITY COMPANY, a Connecticut corporation, Defendant-Appellee.**

**No. 1 CA–CIV 6797.**

Court of Appeals of Arizona, Division 1, Department A.

July 25, 1985.

Review Denied Nov. 13, 1985.

Nicholas C. Guttilla, P.C. by Nicholas C. Guttilla and Brooks T. Hozier, Phoenix, for plaintiffs-appellants.

Jennings, Kepner & Haug by William F. Haug and Carolyn M. Kaluzniacki, Phoenix, for defendant-appellee.

## OPINION

HAIRE, Presiding Judge.

The central issue on appeal is whether a fidelity bond issued by Hartford to Employer's Administrative Services (EAS) covered losses incurred by EAS as a result of the fraudulent acts of Gary Simmons and Bonnie Lindstrom, EAS's sole officers, directors, and shareholders.

EAS was formed as an Arizona corporation in 1976. EAS administered group health plans for businesses which employed EAS's services to receive and disburse premiums, adjust and pay claims and handle various administrative matters. EAS's clients made monthly deposits to savings accounts from which EAS would withdraw funds in the performance of its services.

Following incorporation Simmons and Lindstrom, acting on behalf of EAS, applied for a Hartford fidelity bond. The bond was issued through Marsh and McLennan, Inc., an independent insurance agency.

The record demonstrates that Simmons and Lindstrom began to misappropriate funds at the same time that they, acting in the name of EAS, obtained the fidelity bond from Hartford. The receiver identified over $162,000 in improper withdrawals from employer accounts by Simmons and Lindstrom.

In 1979 the Arizona Department of Insurance investigated EAS's financial affairs and discovered irregularities in its records. Thereafter, the state petitioned to place EAS in receivership. A receiver was appointed and Simmons and Lindstrom were restrained from further business operations.

The receiver examined EAS's business dealings and prepared an accounting of its assets and liabilities. The receiver concluded that EAS had no capital structure. At a hearing, claims well in excess of EAS's assets were presented by EAS's creditors.

The receiver, acting on behalf of EAS filed a claim against Hartford on the fidelity bond. Hartford denied coverage and thereafter the receiver brought this suit. Hartford filed a motion for summary judgment and EAS filed a response and a motion for partial summary judgment. The trial court granted summary judgment for Hartford. It is from this decision that the receiver (hereinafter EAS) appeals.

On review of a summary judgment decision we consider the facts and reasonable inferences therefrom in a light most favorable to the party opposing summary judgment: *Farmers Insurance Co. of Arizona v. Vagnozzi*, 138 Ariz. 443, 675 P.2d 703 (1983). The trial court's legal conclusions, however, will stand or fall on their own merits. *Walsh v. Eberlein*, 114 Ariz. 342, 560 P.2d 1249 (App.1976).

■ The fidelity bond issued by Hartford insured EAS against losses resulting from the fraudulent or dishonest acts of its employees. EAS is the insured party under the policy. While the receiver stands in the shoes of EAS and therefore may properly bring suit against Hartford to collect money allegedly due, we reject any suggestion that EAS's creditors have rights as third party beneficiaries under the fidelity bond. *See American Empire Insurance Co. of South Dakota v. Fidelity and Deposit Co. of Maryland*, 408 F.2d 72 (5th Cir.1969); *Kerr v. Aetna Casualty and Surety Co.*, 350 F.2d 146 (4th Cir.1965). Since the bond is for the protection of EAS and not its creditors, we attach no significance to the receiver's characterization of the embezzled funds as "trust funds." The amount of funds lost due to the dishonest acts of Simmons and Lindstrom is not affected in any way by such characterization.

The threshold question in this case is whether the fidelity bond, by its terms, indemnified EAS against the fraudulent and dishonest acts jointly perpetrated by Simmons and Lindstrom. The bond provided that Hartford:

"[A]grees to indemnify the Insured [EAS] against any loss of money or other property which the Insured shall sustain through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others...."

The term "Employee" is defined in the bond as:

"[A]ny natural person ... while in the regular service of the Insured, in the ordinary course of the Insured's business during the Bond Period and whom the Insured compensates by salary, wages or commissions *and has the right to govern and direct in the performance of such service* ...." (Emphasis added).

EAS alleges that it suffered financial losses due to the fraudulent and dishonest acts of Simmons and Lindstrom and further that Simmons and Lindstrom were indisputably employees of EAS. Since the fidelity bond specifically indemnified EAS against the fraudulent and dishonest acts of its employees, EAS concludes that this is precisely the type of loss for which it obtained the fidelity bond.

Hartford responds that because Simmons and Lindstrom were the sole directors, officers and shareholders of EAS, they were the alter ego of EAS. In essence Simmons

and Lindstrom were EAS. Hartford argues that since Simmons and Lindstrom were the alter egos of EAS, they were not "employees" within the contemplation of the bond. The bond defines "employee" as someone whom the insured (EAS) "has the right to govern and direct in the performance of such service." Hartford contends that because Simmons and Lindstrom together completely governed and directed EAS, they could not have been governed and directed by EAS. Thus, Hartford concludes that the terms of the bond preclude coverage for any losses occasioned by the fraudulent and dishonest acts perpetrated jointly by Simmons and Lindstrom.

 In construing the terms of a fidelity bond we apply the rules of construction applicable to insurance generally. *J.R. Norton Co. v. Firemen's Fund Insurance Co.*, 116 Ariz. 427, 569 P.2d 857 (App.1977). This court must construe an insurance contract according to its terms where those terms are clear and unambiguous. *Industrial Indemnity Co. v. Goettl*, 138 Ariz. 315, 674 P.2d 869 (App.1983). Ambiguity exists in an insurance contract when it can be reasonably construed in more than one sense and such construction cannot be determined within the four corners of the contract. *Ranger Insurance Co. v. Lamppa*, 115 Ariz. 124, 563 P.2d 923 (App.1979).

The bond clearly requires that EAS have the "right to govern and direct" the employees before the employees' fraudulent acts give rise to a compensable claim. This contract language is unambiguous. *See First National Life Ins. Co. v. Fidelity &*

*Deposit Co. of Maryland*, 525 F.2d 966 (1976), (where the court held that a fidelity bond definition of employee which was substantially similar to the definition contained in Hartford's bond, was narrowly drawn). We will not indulge in forced construction of this policy so as to fasten liability to the insurer which the insurer has not contracted to assume. *Stearns-Roger Corp. v. Hartford Accident and Indemnity Co.*, 117 Ariz. 162, 571 P.2d 659 (1977); *Travelers Indemnity Co. v. State*, 140 Ariz. 194, 680 P.2d 1255 (App.1984).

There is no dispute that Simmons and Lindstrom were the sole officers, directors, and shareholders of EAS. Furthermore, it is undisputed that Simmons and Lindstrom colluded in their wrongdoing. EAS argues that, notwithstanding these facts, as a separate and distinct corporate entity, it had the *right* to govern and direct Simmons and Lindstrom, *citing Modern Pioneers Insurance Co. v. Nandin*, 103 Ariz. 125, 437 P.2d 658 (1968). EAS argues that the bond requires merely that the *right* to govern and direct exists, not that such right be actually exercised. In other words, all that is necessary is a theoretical right of the corporation to govern and direct its employees. EAS contends that the existence of its theoretical right to govern and direct Simmons and Lindstrom make them employees for the purposes of coverage under the bond. We disagree.[1]

Instead we adopt the approach articulated in *Kerr v. Aetna Casualty & Surety Co.*, 350 F.2d 146 (4th Cir.1965). The fidelity bond in Kerr like the Hartford bond

---

1. The receiver discusses at length the applicability of a series of published decisions known as the *"Hail Pool"* decisions. *See American Empire Ins. Co. of South Dakota v. Fidelity and Deposit Co. of Maryland*, 408 F.2d 72 (5th Cir. 1969); *Fidelity and Deposit Co. of Maryland v. USAFORM Hail Pool, Inc.*, 318 F.Supp. 1301 (M.D.Fla.1970); 463 F.2d 4 (5th Cir., 1972); 465 F.Supp. 478 (M.D.Fla.1977). The *Hail Pool* decisions arise from a factual scenario similar to the case at bar, and involve a fidelity bond with language similar to Hartford's bond. Despite the apparent similarities between this case and the *Hail Pool* cases, a central dissimilarity makes them distinguishable. Because of the unique facts concerning the insurance applica-

tion in the *Hail Pool* cases, the insurer stipulated before trial that although the defalcating employee was the sole employee and alter ego of the named insured, he was nevertheless specifically intended by the insurer to be covered as an employee under the fidelity bond. 318 F.Supp. at 1309. There has been no such stipulation in this case. The evidence is that Hartford intended its fidelity bond to provide coverage in accordance with its expressed terms, i.e., to cover Simmons and Lindstrom if they were employees within the policy definition. No coverage was intended beyond those terms. The *Hail Pool* decisions are thus of little assistance in this case.

required that the insured have the right to "govern and direct" the employees before the employees' fraudulent acts would be covered by the bond. The insured in *Kerr* argued that the corporation had a theoretical right to govern and direct the defalcating employees and that the existence of this theoretical right was sufficient to bring the employees under the coverage of the bond. The court disagreed, stating:

"As shareholders of Underwriters [the insured] Cudd and Coan [the defalcating employees] elected themselves its sole directors, and as directors they elected themselves its chief executive officers. Since the charter gave the directors the right to manage and control the corporation, Cudd and Coan as directors probably had the technical right to control Cudd and Coan as officers. But such a theoretical and unrealistic right of control did not make Cudd and Coan "Employees" of Underwriters covered by the bond. Such a bond is not intended to cover the fraud and dishonesty of men who are in effect the sole stockholders as well as the only directors of a closely held corporation." *Id.* at 154.

In like manner, Simmons and Lindstrom must be subject to the actual control of EAS before they can be found to be "employees" covered by Hartford's bond. To hold otherwise would turn the fidelity bond coverage into coverage for losses resulting from the insured's own dishonest and fraudulent acts. The majority of cases which have considered this question have concluded that a fidelity bond does not provide coverage under similar facts. "An undertaking insuring a person against his own dishonesty would be, to say the least, a novel and unusual contract." *Farmers & Merchants State Bank of Verdon v. United States Fidelity & Guaranty Co.,* 28 S.D. 315, 133 N.W. 247, 249 (1911).

It has been held that a corporation cannot collect on a surety bond where the loss has resulted from the fraudulent acts of the corporation's controlling owners, directors and officers. *See Kerr, supra; McKee v. Great American Insurance Co.,*

316 F.2d 473 (5th Cir.1963) (where the bond did not cover the fraudulent acts of the principal officer and sole stockholder); *First National Life Insurance Co. v. Fidelity & Deposit Co. of Maryland,* 525 F.2d 966 (5th Cir.1976) (where the bond did not cover fraudulent acts of two promoters who looted an insurance company by obtaining the parent company and subsequently electing themselves officers and directors of both the parent and insurance company). Indeed, even in fidelity bond cases in which liability has been imposed, courts have commented that had the defalcating employees been the sole officers, directors and shareholders of the insured corporation, the insurer would have been absolved of liability. *See Insurance Co. of North America v. Greenberg,* 405 F.2d 330 (10th Cir.1969) (where employees were not excepted from bond coverage because they were not the sole directors nor majority stockholders of the corporation); and *General Finance Corp. v. Fidelity & Casualty Corp. of New York,* 439 F.2d 981 (8th Cir.1971) (where president and wife who were also majority stockholders were not exempted from bond coverage because the insured corporation remained subject to the control of independent directors who at all times had the right to govern and direct the exercise of all corporate powers, business and property).

■ Simmons and Lindstrom were acting in concert and since together they constituted the totality of EAS's officers, directors and shareholders, they were never subject to anyone's governance and direction. EAS did not govern and direct them. To allow recovery on EAS's claim would in essence be interpreting the policy as allowing Simmons and Lindstrom to insure themselves through EAS, a corporation over which they had unbridled control, for their own intentional wrongdoing. This we will not do. We therefore hold that Simmons and Lindstrom were not covered employees within the definition contained in Hartford's fidelity bond and their fraudulent and dishonest acts did not give rise to

a valid claim by EAS's receiver against Hartford.[2]

We now turn to EAS's second argument. EAS submits that Hartford is estopped from denying that Simmons and Lindstrom are covered employees under the fiduciary bond. "The elements of estoppel are: *conduct* by which one induces another to believe and have confidence in certain material facts, which inducement results in acts in reliance thereon, justifiably taken, which causes injury to the persons thus relying [citations omitted]." *State Farm Mutual Automobile Ins. Co. v. Robison*, 11 Ariz. App. 41, 45, 461 P.2d 520, 524 (1970).

The Hartford fidelity bond sold to EAS was procured by Jack Katzenmeyer who worked for Marsh and McLennan, Inc., an independent insurance agency. EAS argues that Katzenmeyer's deposition testimony established that he was aware that Simmons and Lindstrom were the principals of EAS and that he intended that they be employees covered by the bond. EAS asserts that Katzenmeyer acted as Hartford's agent in selling the bond to EAS. EAS therefore concludes that because the knowledge of an agent in doing business for his principal is imputed to the principal, *Hays v. Bank of Arizona*, 57 Ariz. 8, 110 P.2d 235 (1941), Katzenmeyer's knowledge should be imputed to Hartford. EAS notes that Hartford on several occasions supplied EAS's creditors with certificates of insurance to assure them that the corporation was covered against the dishonest acts of its employees.[3] In EAS's own words:

"Hartford is now estopped from denying the coverage of Gary Simmons and Bonnie Lindstrom after it had received full disclosure from EAS that these individuals were to be covered, acknowledged during oral argument that they were covered ..., received full disclosure of the underlying operation and relationships of the individuals to EAS, in fact,

indicated to EAS and to its member employers that the coverage was in effect and accepted premiums thereafter for an approximate three (3) year period."

A review of the record leads us to conclude that estoppel is not warranted in this case. Indeed, EAS's version of the evidence (as well as its discussion of the applicable authorities) displays a considerable lack of candor. Katzenmeyer himself in deposition admitted that he was not acting as the agent for Hartford when procuring the fidelity bond for EAS but rather he was working as an insurance broker on behalf of EAS. Thus, his knowledge could not be imputed to Hartford. In addition, the record establishes that Katzenmeyer did not intend that Simmons and Lindstrom be automatically covered under the bond. Rather, his intent was that Simmons and Lindstrom would be covered under the bond if they fell within the definition of employee contained within the bond.

■ There is *no* evidence to support EAS's assertion that Hartford was aware that Simmons and Lindstrom were the sole officers, directors and shareholders of EAS. Indeed even Katzenmeyer was ignorant of that fact. Nor does the record support EAS's contention that Hartford provided the fidelity bond knowing that it would not cover the fraudulent or dishonest acts of Simmons and Lindstrom. EAS's initial bond application indicated that six persons worked for EAS. Subsequent documents in Hartford's possession indicated the presence of 14 employees in 1976 and 27 employees in 1977. The trial judge did not err in finding that estoppel was not present in this case.

Our review of the record reveals no issue of material fact relevant to the disposition of this case. We conclude that Simmons and Lindstrom acting together totally governed and directed EAS and thus could not

---

2. Our holding would not necessarily be the same in the absence of *joint* action by the sole officers, directors and shareholders. In such circumstances it might well be that the control exercised by the non-fraudulent party would be sufficient to satisfy the policy definition.

3. As previously noted, the creditors of EAS are not third party beneficiaries to the fidelity bond and therefore estoppel could not be based upon their reliance on the fidelity bond coverage.

be subject to the governance and direction of EAS. As such, they were not employees as defined in the fidelity bond. Because we have found as a matter of law that there was no insurance coverage for the fraudulent acts complained of, we need not consider the remaining issues presented by Hartford and EAS.

The judgment entered by the trial court is affirmed.

BROOKS and GRANT, JJ., concur.