John FROST and Beverly Frost, and
Ruby Louise Gibson, Appellants,

v.

LIBERTY MUTUAL INSURANCE
COMPANY, and U.S.A.A.,
Respondents.

No. WD 43993.

Missouri Court of Appeals,
Western District.

Feb. 25, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
March 31, 1992.

Application to Transfer Denied
June 2, 1992.

Leonard K. Breon, Breon & Leffler, Warrensburg, for John Frost and Beverly Frost.

C. Michael Fitzgerald, Fitzgerald, Fitzgerald, & Carter, Warrensburg, for Ruby Louise Gibson.

Paul L. Wickens, James T. Thompson, Sherman, Wickens & Lysaught, P.C., Kansas City, for Liberty Mut. Ins. Co.

William H. Sanders, Peter B. Sloan, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, for U.S.A.A.

Before BERREY, P.J., and BRECKENRIDGE and ULRICH, JJ.

BRECKENRIDGE, Judge.

Appellants, John Frost, Beverly Frost and Ruby Gibson, appeal from the trial court's grant of summary judgment in favor of respondents, Liberty Mutual Ins. Co. and United States Automobile Association (USAA). The Frosts present three points on appeal, claiming that the trial court erred in holding that: (1) Liberty Mutual's policy accorded single-limit uninsured motorist coverage of $50,000.00 for all injuries of all persons arising out of a motor vehicle collision between vehicles driven by John Gibson and Hubert White; (2) USAA's policy did not accord the Frosts any coverage for their damages incurred in the Gibson-White collision; and (3) Liberty Mutual had reasonable cause or excuse to refuse to pay the Frosts' uninsured motorist loss. Mrs. Gibson raises two points in this appeal: (1) that the trial court erred in holding that Liberty Mutual's policy accorded single-limit uninsured motorist coverage of $50,000.00 for all of the injuries of all of the persons arising out of the Gibson-White collision; and (2) that the trial court erred in holding that USAA's policy only accorded Gibson $15,000.00 uninsured motorist coverage.

On June 14, 1988, Ruby Gibson's husband John, an Arizona resident, rented a car from Alamo Rent-A-Car in Kansas City, Missouri. The following day, June 15, 1988, John Gibson was driving his rental car on Missouri Route 13 when it was struck head on by a vehicle operated by Hubert White. White was an uninsured motorist. John Gibson died as a result of the accident. His passenger, John Frost, sustained injuries as a result of the wreck.

Mr. Gibson had an insurance policy with USAA covering four vehicles that were registered and garaged in Arizona. Liberty Mutual insured Alamo Rent-A-Car's worldwide operations and, at the time of the accident, the Liberty Mutual Policy was

in force and effect. Both the USAA policy and the Liberty Mutual policy included uninsured motorist coverage.

Litigation in this action was commenced when the Frosts filed suit against White on November 8, 1988. A judgment was had against White in favor of the Frosts. This judgment was reversed in *Frost v. White,* 778 S.W.2d 670 (Mo.App.1989), where this court held that Liberty Mutual's motion to intervene had been wrongly denied by the trial court. After remand, the trial court entered an order allowing Liberty Mutual to intervene. Liberty Mutual filed a motion to vacate the judgment in favor of the Frosts and the trial court sustained that motion. The Missouri Supreme Court upheld the action of the trial court. *Frost v. Liberty Mut. Ins. Co.,* 813 S.W.2d 302 (Mo. banc 1991). The Frosts have settled with their own uninsured motorist carrier, American States Insurance Company.

On March 9, 1989, the Frosts filed a declaratory judgment action seeking a judicial determination as to what the extent of USAA's and Liberty Mutual's insurance coverage was for their claimed damages. Liberty Mutual filed an action for interpleader naming the Frosts and Ruby Gibson as defendants and paid into the court the sum of $50,000.00, the amount it contended its policy accorded coverage for the accident. Eventually all of the actions arising out of the Gibson–White collision were consolidated. All parties solicited summary judgment. The trial court's docket entry on the matter of summary judgment stated:

> The court, having considered the arguments of counsel, the extensive briefs of counsel, the law in the State of Missouri and the law in the State of Arizona, as it applies to the facts of this case, and having fully taken this case under advisement, does hereby make the following findings and orders: 1) The court enters summary judgment in favor of U.S.A.A. as follows: a) The court finds that Arizona law applies; b) The policy provisions excluding stacking of uninsured motorist coverage is, therefore effective; and c) Mr. and Mrs. Frost are *not* "covered persons" as defined in part

C—uninsured motorists coverage of the U.S.A.A. policies. Therefore, U.S.A.A. has no uninsured motorist coverage liability as to Mr. & Mrs. Frost, and it has no liability to Ruby Gibson beyond the sum of $15,000.00. 2) The court finds no significant ambiguity in the policy of Liberty Mutual. The court finds that the policy provides a $50,000.00 single limit for all injuries of *all persons.* This is an amount to be divided between the Frosts and Ruby Gibson. Therefore, the motion of Liberty Mutual for summary judgment as to count I of plaintiffs petition is hereby sustained. 3) As a necessary result, plaintiffs John and Beverly Frost, and Ruby Louise Gibson's motions for summary judgment in their favor are denied. 4) Court enters summary judgment in favor of Liberty Mutual on count II of plaintiff's Frosts [sic] petition, namely its cause of action for vexatious refusal to pay. Since Liberty Mutual paid into court in a timely fashion the full amount of its policy limits as this court found them to be, it necessarily follows that the ruling of this court should be, and is hereby that judgment be entered in favor of Liberty Mutual on count II of plaintiffs Frosts [sic] petition. The court intends that these judgments be final for purposes of appeal, and the court expressly determines that there is no just reason for delay, pursuant to Missouri Supreme Court Rule 74.01(b).

Both the Frosts and Mrs. Gibson appeal.

As both the Frosts' Point I and Mrs. Gibson's Point I concern the same issue, they will be considered together. Both assert that the trial court erred in holding that Liberty Mutual's policy accorded single-limit uninsured motorist coverage of $50,000.00 for all injuries of all persons arising out of the Gibson–White collision. They contend this is error because Missouri law requires at least $25,000.00 per person and $50,000.00 per accident uninsured motorist coverage and because the Liberty Mutual Policy accorded unbounded uninsured motorist coverage until the day after the collision. Both the Frosts and Mrs. Gibson further contend that the ruling is

without supportive evidence, is against the weight of the evidence and is an erroneous application of the law under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976).

Summary judgment shall be entered for the party seeking it, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Rule 74.04(c). When considering a motion for summary judgment, an appellate court reviews the record in the light most favorable to the party against whom the motion was filed, according that party all reasonable inferences drawn from the evidence. *Gast v. Ebert*, 739 S.W.2d 545, 546 (Mo. banc 1987).

The Liberty Mutual policy with Alamo Rent–A–Car contained the following statement: "Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations." As of the date of the accident, the only amount shown on the declarations portion of the policy in Item 8, page 5, was $1,000,000.00. This amount, however, was only applicable if the renter purchased the Extended Protection Option. It is not applicable in the instant case because John Gibson did not purchase this option. The next page in the document, Item 8, page 6, has a blank space next to Missouri on a form again referring to the schedule of limit of liability for uninsured motorists insurance. This form also has the proviso that it applies only with the purchase of the Extended Protection Option. The policy clearly identifies this latter proviso as an error, however, as an amendment dated November 17, 1987 deletes the language referring to the Extended Protection Option and adds, "[t]his schedule applies to any *covered auto other than* an auto used under a rental agreement in which the rentee elected the Extended Protection Option (E.P.)." This provision would be controlling, except that the day after the accident another amendatory endorsement, Endorsement 64, was added limiting coverage in Missouri to $50,000.00 for renters who did not elect extended protection and stating an effective date of May 11, 1988.

According to affidavits provided by Rochelle Feinberg, manager of corporate claims for Alamo Rent–A–Car, and Tom Livingston, chief underwriter in the home office transport department of Liberty Mutual, the original policy contained several typographical errors. Alamo Rent–A–Car did not rent cars in Missouri as of October 16, 1987, the date of the replacement policy issued to correct the typographical errors in the original policy. Alamo Rent–A–Car advised Liberty Mutual on April 25, 1988, that it was renting cars in Missouri and requested that Liberty Mutual endorse the policy to provide uninsured motorist coverage for the state of Missouri in the amount of $50,000.00. Endorsement 64 was prepared with an effective date of May 11, 1988. Coincidentally, it was not until the day after the accident, June 16, 1988, that the orally agreed upon endorsement was typed.[1] Although the parties debate whether there is ambiguity in the terms of the policy which requires construction, the crux of this matter is what effective date should be given Endorsement 64. "The function of this court is to interpret and enforce an insurance contract as written; not to rewrite the contract." *Eagle Star Ins. Co. v. Family Fun, Inc.*, 767 S.W.2d 623 (Mo.App.1989). The language of the policy is clear. If the oral modification is effective on May 11, 1988, there is a $50,000.00 limit for uninsured motorist coverage. If the modification is not effective until reduced to writing on June 16, 1988, there is no dollar limitation on the uninsured motorist coverage.

Naturally, the Frosts and Mrs. Gibson argue that Endorsement 64 was not in effect on the date of the accident. They rely upon *Lutsky v. Blue Cross Hosp. Serv. Inc.*, 695 S.W.2d 870, 876 (Mo. banc 1985), to support their claim that an insurance company cannot retroactively restrict its

---

1. This was a coincidence. Liberty Mutual had no notice of the accident until June 30, 1988.

initially unbounded accord of coverage for a loss that had already been experienced. *Lutsky* holds that "to defeat liability on an insurance contract, the termination must be effective before any liability attaches." *Id.* at 879. *Lutsky* dealt specifically with an attempt by an insurer to limit health care coverage after the occurrence of an illness for which the insured continued to receive treatment. The court found that the policy limits of the contract in force when the illness occurred could not be reduced by a new agreement between the insurance company and the sponsor of the insurance. *Id.* at 871.

■ The facts in the instant case do not show an attempt to limit coverage by the insurer's actions after the accident. Instead, the oral agreement between Liberty Mutual and Alamo Rent–A–Car predated the Gibson–White collision. Appellants do not point to any provision of the policy or any statute or regulation which prohibits oral modification of the terms of the insurance policy. The situation in the instant case is analogous to situations where there are oral binders of insurance between insurance companies and their insureds. *See Chailland v. M.F.A. Mut. Ins. Co.,* 375 S.W.2d 78, 81 (Mo. banc 1964); *Morris v. Reed,* 510 S.W.2d 234, 239 (Mo.App.1974). The fact that the agreement for coverage was oral is not a bar to the effectiveness of the endorsement. Such oral modification is permissible under Missouri law. *Shelter Mut. Ins. Co. v. Briggs,* 799 S.W.2d 846, 851 (Mo.App.1990); *Hood v. Millers' Mut. Ins. Ass'n,* 578 S.W.2d 605 (Mo.App.1979).

John Gibson was not a party to the bargaining or negotiating of Endorsement 64 and appellants do not claim he had any knowledge of the terms of the policy. He became an insured under the existing terms of the policy simply by renting a car from Alamo and by declining to purchase the Extended Protection Option. Endorsement 64 was a product of the negotiation between two parties, Liberty Mutual and Alamo Rent–A–Car. There was no evidence as to any lack of agreement between Liberty Mutual and Alamo as to the terms

of Endorsement 64 or its effective date of May 11, 1988; nor was there evidence of changes in the agreement that occurred at the time it was reduced to writing. The effective date of the endorsement is the date of the oral agreement. *See Travelers Indem. Co. v. Beaty,* 523 S.W.2d 534 (Mo. App.1975). Thus, the effective date of Endorsement 64 is May 11, 1988, and that endorsement was in force at the time of the accident.

■ It is also argued that the policy under review violates the Missouri Motor Vehicle Safety Responsibility Law, which provides for, at a minimum, $25,000.00 per person with a $50,000.00 aggregate limit of uninsured motorist coverage for motor vehicles registered or principally garaged in Missouri. § 379.203, RSMo 1986. Missouri law provides that "[e]xisting and valid statutory provisions enter into and form a part of all contracts of insurance to which they are pertinent and applicable as fully as if such provisions were written into them." *Ward v. Allstate Ins. Co.,* 514 S.W.2d 576, 578 (Mo. banc 1974) (quoting 43 Am.Jur.2d, *Insurance,* § 289, p. 350). Nothing in the instant case is inconsistent with the statutory minimum. The trial court found "a $50,000.00 single limit for all injuries of all persons." How that $50,000.00 is to be divided is not, as of yet, an issue in this case. The Frosts' Point I and Mrs. Gibson's Point I are denied.

■ The Frosts also contend that the trial court erred in holding that Liberty Mutual had reasonable cause or excuse to refuse to pay the Frosts' uninsured motorist loss because, after negotiations with Liberty Mutual broke down, the Frosts obtained a judgment against the uninsured motorist on December 22, 1988. The judgment was for a sum of fifteen times greater than the sum Liberty Mutual eventually tendered into the court on May 3, 1989, as its contended policy's limits. The subject of the finality of that judgment was pending in the Missouri Supreme Court at the time of the present appeal.[2]

---

**2.** The Missouri Supreme Court affirmed the action of the trial court in vacating the judgment

An insurer, acting in good faith, has a right "to litigate an open question of law or disputed facts for which there is reasonable or probable cause for belief." *Cohen v. Metropolitan Life Ins. Co.*, 444 S.W.2d 498, 506 (Mo.App.1969). The insurer may insist upon such a judicial determination of open questions of law or fact without incurring a penalty for so proceeding. *Id.; See also Hopkins v. North Am. Co. for Life & Health Ins.*, 594 S.W.2d 310 (Mo.App.1980). In the instant case, Liberty Mutual's refusal to pay the original·judgment was not vexatious as the company was merely proceeding as it is allowed to do under the law. The limits of Liberty Mutual's liability on the policy were an open question. Indeed, this opinion affirms the judgment of the trial court, holding that Liberty Mutual's policy accords single-limit uninsured motorist coverage of $50,000.00 for all of the injuries of all of the parties arising out of the Gibson–White collision. The point is denied.

 We turn now to the Frosts' and Mrs. Gibson's allegations of error in the grant of summary judgment to USAA. Since both parties contend that the trial court erred in applying Arizona law instead of Missouri law, that issue will be addressed as a preliminary determination since the outcome of the other issues are affected by its resolution. Missouri uses the criteria contained in § 188, The Restatement (Second) of Conflicts of Law (1971), in choice of law situations dealing with contracts. *Brown v. Brown*, 678 S.W.2d 831, 833 (Mo.App.1984). The contacts to be weighed and evaluated are: (1) the place of the contract; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the conflict; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id.*

In situations closely related to that of the case at bar, this court gives great weight to where the contract was entered into and

that the Frosts had obtained against White in *Frost v. Liberty Mut. Ins. Co.*, 813 S.W.2d 302

where the insured vehicle was registered. For example, in *Hayde v. Womach*, 707 S.W.2d 839 (Mo.App.1986), the court stated, "since the insurance contract between the Womachs and Nationwide was entered into in Delaware and since the Womach vehicle was registered in Delaware, the court was required to apply Delaware law to determine the rights and duties arising out of the insurance contract." In *South v. American Interinsurance Exch.*, 743 S.W.2d 421, 422 (Mo.App.1987), insurance policies were issued in Iowa covering vehicles principally garaged in Iowa. The insured persons were residents of Iowa. *Id.* The accident occurred in Missouri. *Id.* at 421. The court found Iowa law applied, reasoning that "[i]t would be strange indeed if contract obligations imposed by law would change whenever a state line is crossed." *Id.* at 422 (quoting *State Farm Mutual Automobile Insurance Co. v. MFA Mutual Insurance Co.*, 671 S.W.2d 276 (Mo. banc 1984)).

In the instant case, the accident took place in Missouri with a Missouri uninsured motorist. Mr. Frost, the injured passenger was a Missouri resident. The insured driver, Mr. Gibson, was an Arizona resident. USAA delivered its policy in Arizona and the insurance covered Arizona vehicles, registered and garaged in Arizona. Weighing the significant contacts in accordance with established Missouri precedent, it is clear that Arizona law is the proper law to be applied to the substantive issues concerning the USAA policy.

The USAA policy provides, in pertinent part:

We will pay damages which a **covered person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle because of bodily injury:**

 1. Sustained by a **covered person;** and

 2. Caused by an accident.

 \* \* \* \* \* \*

"**Covered person**" as used in this Part means:

(Mo. banc 1991).

1. You or any family member.
2. Any other person **occupying your covered auto.**
3. Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person described in 1. or 2. above.

"Covered auto" is defined as:

1. Any vehicle shown in the Declarations.
2. Any of the following types of vehicles on the date you become the owner: a private passenger auto, or a pickup, panel truck, or **van,** not used in any business or occupation other than farming or ranching.

 \* \* \* \* \* \*

3. Any **trailer** you own.
4. Any **temporary substitute vehicle.**

 \* \* \* \* \* \*

"**Temporary substitute vehicle**" means any auto or trailer not owned by you or **a family member** while used with permission as a temporary substitute for your covered auto when withdrawn from normal use because of its breakdown, repair, servicing, loss, or destruction.

The limits shown on the policy for bodily injury in "Part C–Uninsured Motorists" are $15,000.00 per person, $30,000.00 per accident. Under the terms of this policy, no coverage is afforded the Frosts.

■ ."Provisions of insurance policies are construed according to their plain and ordinary meaning." *Millar v. State Farm Fire & Casualty Co.,* 167 Ariz. 93, 804 P.2d 822, 825 (App.1990). A court may not take the easy out by inventing an ambiguity and finding coverage where no ambiguity exists in the policy. *Id.* 804 P.2d at 824. Ambiguity exists only where an insurance contract can be reasonably construed in more than one way and construction cannot be determined within the boundaries of the four corners of the instrument. *Employer's Admin. Serv., Inc. v. Hartford Acc. & Indem. Co.,* 147 Ariz. 202, 709 P.2d 559, 562 (App.1985). Under the terms of the USAA policy no coverage exists for the Frosts, as John Frost was a passenger in Mr. Gibson's rental car, which is not included in the definition for "temporary substitute vehicle." The trial court did not err in granting summary judgment to USAA in regard to the Frosts' claims.

■ Mrs. Gibson claims that USAA failed to give a mandatory statutory notice relative to the availability of uninsured motorist coverage up to the limits of liability coverage and, therefore, the minimum and maximum coverage available were $100,-000.00 or $400,000.00 respectively. Specifically, Mrs. Gibson claims a violation of Ariz.Rev.Stat.Ann. § 20–259.01(B) (Supp. 1989), which states:

B. Every insurer writing automobile liability or motor vehicle liability policies, as provided in subsection A of this section shall also make available to the named insured thereunder and by written notice offer the insured and at the request of the insured shall include within the policy uninsured motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy. At the request of the insured, the insured may purchase and the insurer shall then include within the policy uninsured motorist coverage which extends to and covers all persons insured under the policy in any amount up to the liability limits for bodily injury or death contained within the policy but not less than the limits prescribed in subsection A of this section.

Mrs. Gibson claims that the policy attached to USAA's motion for summary judgment showed no such offer. USAA, however, did attach an affidavit made by Georgianne Pavlica, an employee of USAA, who stated that form 999AZ was sent to John Gibson. This form offered extended benefits and uninsured motorist coverage. Mr. Gibson never requested any increase. Furthermore, the USAA policy alludes to such coverage by stating, "UM is mandatory and is automatically included unless you request higher limits up to your Bodily Injury limits." Nothing was offered to

refute Ms. Pavlica's affidavit, thus Mrs. Gibson's allegation is without merit.

 Finally, Mrs. Gibson claims that the USAA policy contains language expanding coverage to meet the financial responsibility requirements of any state and since Missouri's law requires minimum coverage of $25,000.00 for uninsured motorist coverage and mandates stacking of such coverage, the coverage available to her was $100,000.00. USAA's insurance contract states:

If an auto accident to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, we will interpret your policy for that accident as follows:

If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for bodily injury or property damage higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

No one will be entitled to duplicate payments for the same elements of loss.

This provision appears in, "Part A—Liability Coverage" of USAA's "Easy Reading Auto Policy." A separate section easy-reading portion of the policy deals with uninsured motorist coverage. The uninsured motorist provisions do not make any reference whatsoever to the language found in the liability portion of the policy and quoted above. The liability insurance sections and the uninsured motorist sections are kept separate from each other throughout the policy. In context, it is clear that the language relied upon by Mrs. Gibson refers only to liability coverage. "Provisions of insurance policies are to be construed according to their plain and ordinary meaning." *Millar,* 804 P.2d at 825. There is no ambiguity that exists in this provision when read in context within the section in which it appears and its plain and ordinary meaning accords specific liability coverage in compliance with the laws of other states.

The USAA policy provides a maximum limit for one accident "regardless of the number of covered persons, claims made, vehicles or premiums shown in the Declarations, or vehicles involved in the accident." Because Arizona law governs and upholds policy language that precludes the stacking of coverages, *Hampton v. Allstate Ins. Co.,* 126 Ariz. 403, 616 P.2d 78 (App.1980), the language in the USAA policy effectively limits coverage to $15,000.00. Mrs. Gibson's final point is denied.

The judgment of the trial court is affirmed.

All concur.